NO. _____

---

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

**Gawain Baxter, et al.,**
Plaintiffs–Appellants,

v.

**David Miscavige, et al.,**
Defendants–Appellees.

---

**PETITION FOR PERMISSION FOR INTERLOCUTORY APPEAL
UNDER 28 U.S.C. § 1292(B) ON BEHALF OF
PLAINTIFFS-PETITIONERS GAWAIN BAXTER, LAURA BAXTER, AND
VALESKA PARIS**

On Appeal from the United States District Court
for the Middle District of Florida
Tampa Division
Case No. 8:22-cv-986-TPB-JSS

---

Joseph C. Kohn
Neil L. Glazer
Zahra R. Dean
Aarthi Manohar
Elias Kohn
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103

Gregory P. Hansel
(Fla. Bar No. 607101)
Shana M. Solomon
Elizabeth F. Quinby
PRETI FLAHERTY BELIVEAU &
PACHIOS, CHARTERED, LLP
One City Center
P.O. Box 9546

Telephone: (215) 238-1700
jkohn@kohnswift.com
nglazer@kohnswift.com
zdean@kohnswift.com
amanohar@kohnswift.com
ekohn@kohnswift.com
Theodore Leopold
(Fla. Bar No. 705608)
Manuel J. Dominguez
(Fla. Bar No. 0054798)
COHEN MILSTEIN SELLERS
 & TOLL PLLC
11780 U.S. Highway One,
Suite N500
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400
tleopold@cohenmilstein.com
jdominguez@cohenmilstein.com

Shelby Leighton
PUBLIC JUSTICE
1620 L St. NW, Suite 630
Washington, DC 20036
Telephone: (202) 797-8600
sleighton@publicjustice.net
ayandle@publicjustice.net

Portland, ME 04112-9546
Telephone: (207) 791-3000
ghansel@preti.com
ssolomon@preti.com
equinby@preti.com

Agnieszka M. Fryszman
Brendan Schneiderman
COHEN MILSTEIN SELLERS &
TOLL PLLC
1100 New York Ave., N.W.
Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
afryszman@cohenmilstein.com
bschneiderman@cohenmilstein.com

Warren A. Zimmerman
(Fla. Bar No. 652040)
WARREN A. ZIMMERMAN, P.A.
4114 Sparrow Ct
Lutz, FL  33558-2727
Telephone: (813) 230-1465
warren@wzimmermanlaw.com

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for Petitioners hereby disclose the following list of known persons, associated persons, firms, partnerships or corporations that have a financial interest in the outcome of this case, including all subsidiaries, conglomerates, affiliates, parent corporations, and other identifiable legal entities related to a party in this case:

- Barber, Thomas Patrick, United States District Judge

- Baxter, Gawain, Plaintiff-Petitioner

- Baxter, Laura, Plaintiff-Petitioner

- Cech Samole, Brigid F., attorney representing Defendant-Respondent, Church of Scientology Flag Ship Service Organization, Inc.

- Church Of Scientology Flag Service Organization, Inc. (FSO), Defendant-Respondent

- Church Of Scientology Flag Ship Service Organization, Inc. (FSSO), Defendant-Respondent

- Church Of Scientology International, Inc., Defendant-Respondent

- Cohen Milstein Sellers & Toll PLLC, law firm representing Petitioners

- Commons Durham, Krystal, attorney representing Defendant-Respondent David Miscavige

- Crespo, Janelly, attorney representing Respondent Religious Technology Center, Inc.

- David Barnett Weinstein, attorney representing Respondent Church of Scientology FSSO

- David Miscavige, Defendant-Respondent

- Dean, Zahra R., attorney representing Petitioners

- DLA Piper, US, LLP, law firm Representing Respondent Religious Technology Center, Inc.

- Dominguez, Manuel J., attorney representing Petitioners

- Forman, William Hobbes, attorney representing Respondent Church of Scientology International, Inc.

- Fryszman, Agnieszka M., attorney representing Petitioners

- Glazer, Neil L., attorney representing Petitioners

- Greenberg Traurig, P.A., law firm representing Respondent FSSO

- Gunster, Yoakley & Stewart, P.A., law firm representing Respondent David Miscavige

- Hansel, Gregory P., attorney representing Petitioners

- Harris, Jr., Charles M., attorney representing Respondents FSO and FSSO

- International Association of Scientologists Administrations (IASA), Defendant-Respondent

- Johnson, Pope, Bokor, Ruppel & Burns, LLP, law firm representing Respondent IASA

- Kohn, Elias, attorney representing Petitioners

- Kohn, Joseph C., attorney representing Petitioners

- Kohn, Swift & Graf, P.C., law firm representing Petitioners

- Leighton, Shelby, attorney representing Petitioners

- Leopold, Theodore, attorney representing Petitioners

- Manohar, Aarthi, attorney representing Petitioners

- Membiela, Gustavo Javier, attorney representing Respondent Church of Scientology International, Inc.

- Merenda, Brigid Anne, attorney representing Respondents FSO; FSSO

- Oprison, Christopher George, attorney representing Respondent Religious Technology Center, Inc.

- Paris, Valeska, Plaintiff-Petitioner

- Porter, Brian C., attorney representing Respondent FSSO

- Potter, Robert Vernon, attorney representing Respondent IASA Administrations, Inc.

- Preti Flaherty Beliveau & Pachios, Chartered, LLP, law firm representing Petitioners

- Public Justice, nonprofit legal advocacy organization representing Petitioners

- Quinby, Elizabeth F., attorney representing Petitioners

- Religious Technology Center (RTC), Defendant-Respondent

- Schifino, Jr., William J., attorney representing Respondent David Miscavige

- Schneiderman, Brendan, attorney representing Petitioners

- Solomon, Shana M., attorney representing Petitioners

- Terry, Joseph Marshall, attorney representing Respondent David Miscavige

- Trenam, Kemker, Scharf, Barkin, Frye, O'neill & Mullis, law firm representing Respondents FSO and FSSO

- Warren A. Zimmerman, P.A., law firm representing Petitioners

- Williams & Connolly LLP, law firm representing Respondent David Miscavige

- Winston & Strawn LLP, law firm representing Respondent Church of Scientology International, Inc.

- Zimmerman, Warren A., attorney representing Petitioners

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................1

STATEMENT OF THE QUESTIONS PRESENTED.............................................8

RELIEF SOUGHT BY PLAINTIFFS/PETITIONERS ............................................9

ARGUMENT ......................................................................................9

I.      THESE ARE CONTROLLING QUESTIONS OF PURE LAW ..................9

II.     THE ISSUES INVOLVE SUBSTANTIAL GROUNDS FOR
        DIFFERENCE OF OPINION ......................................................12

        A.      There is Substantial Ground for Difference of Opinion as to
                Who Decides Petitioners' Duress and Fraud-in-the-Execution
                Challenges ...................................................................13

        B.      There is Substantial Ground for Difference of Opinion as to
                Whether the First Amendment Precludes Compelling
                Arbitration Here ...........................................................19

III.    RESOLVING THESE QUESTIONS NOW WILL MATERIALLY
        ADVANCE THE TERMINATION OF THIS LITIGATION......................20

CONCLUSION ...................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allapattah Servs., Inc. v. Exxon Corp.*,
    333 F.3d 1248 (11th Cir. 2003) .........................................................................10

*AT&T Mobility v. Concepcion LLC*,
    563 U.S. 333 (2011) (Thomas, J., concurring) ..................................................14

*Bennett v. Jefferson Cnty., Ala.*,
    No. 2:14-CV-0213-SLB, 2014 WL 12984712 (N.D. Ala. Dec. 1,
    2014) ..................................................................................................................17

*Bixler v. Superior Ct. for the State of Cal.*,
    No. B310559, 2022 WL 167792 (Cal. Ct. App. Jan. 19, 2022) ....................5, 19

*Bruni v. Didion*,
    160 Cal. App. 4th 1272 (Cal. Ct. App. 2008) ....................................................14

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006).....................................................................................*passim*

*Cancanon v. Smith Barney, Harris, Upham & Co.*,
    805 F.2d 998 (11th Cir. 1986) ...........................................................................16

*Coleman v. Prudential Bache Secs., Inc.*,
    802 F.2d 1350 (11th Cir. 1986) .........................................................................14

*Consol. Companies, Inc. v. Union Pac. R. Co.*,
    No. CIV.A. 98-1804L-O, 2006 WL 950198 (W.D. La. Apr. 11,
    2006) ..................................................................................................................17

*Curtis Pub. Co. v. Butts*,
    388 U.S. 130 (1967).........................................................................................19

*Drummond Co. v. Conrad & Scherer, LLP*,
    885 F.3d 1324 (11th Cir. 2018) .........................................................................11

*Garcia v. Church of Scientology Flag Serv. Org., Inc.*,
    No. 18-13452, 2021 WL 5074465 (11th Cir. 2021).............................................7

ii

*Gibbs v. Sequoia Cap. Ops., LLC*,
  966 F.3d 286 (4th Cir. 2020) ...............................................................18

*In re Grand Jury Investigation*,
  338 F. Supp. 1379 (W.D. Pa. 1972)......................................................11

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
  561 U.S. 287 (2010)..............................................................................15

*Harris v. Luckey*,
  918 F.2d 888 (11th Cir. 1990) ..............................................................10

*Int'l Refugee Assistance Project v. Trump*,
  404 F. Supp. 3d 946 (D. Md. 2019)......................................................11

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
  581 U.S. 246 (2017)..............................................................................13

*Love v. Delta Air Lines*,
  310 F.3d 1347 (11th Cir. 2002) ............................................................10

*MacDonald v. CashCall, Inc.*,
  883 F.3d 220 (3d Cir. 2018) .................................................................18

*Martinez-Gonzalez v. Elkhorn Packing Co., LLC*,
  2019 WL 13119015 (N.D. Cal. Mar. 11, 2019) ...................................14

*\*McFarlin v. Conseco Servs. LLC*,
  381 F.3d 1251 (11th Cir. 2004) ...........................................9, 10, 12, 20

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*,
  637 F.2d 391 (5th Cir. Feb. 19, 1981) ............................................14, 15

*Morgan Stanley Cap. Grp. v. Pub. Util. Dist.No. 1 of Snohomish Cty.*,
  554 U.S. 527 (2008)..............................................................................13

*Nagrampa v. MailCoups, Inc.*,
  469 F.3d 1257 (9th Cir. 2006) ..............................................................18

*Najarro v. Super. Ct. of San Bernadino Cnty.*,
  285 Cal. Rptr. 3d 700 (Cal Ct. App. 2021)..........................................16

*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*,
  232 Cal. Rptr. 3d 282 (Cal. Ct. App. 2018) .......................................................18

*Parm v. Nat'l Bank of Cal., N.A.*,
  835 F.3d 1331 (11th Cir. 2016) ...........................................................................16

*\*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967) ................................................................................13, 15, 16

*Rodrigues v. CNP of Sanctuary, LLC.*,
  523 Fed. Appx. 628 (11th Cir. 2013) ..................................................................11

*In re Sci.-Atlanta, Inc. Sec. Litig.*,
  *2003 WL 25740734* (N.D. Ga. Apr. 15, 2003) ..................................................11

*Solymar Invs., Ltd. v. Banco Santander S.A.*,
  672 F.3d 981 (11th Cir. 2012) ................................................................15, 16, 17

*Synnex Corp. v. Wattles*,
  2012 WL 5524953 (N.D. Cal. 2012) ...................................................................14

*Tucker v. Fearn*,
  333 F.3d 1216 (11th Cir. 2003) ...........................................................................10

*Tuckman v. JPMorgan Chase Bank, N.A.*,
  2021 WL 3357953 (11th Cir. Aug. 3, 2021) .......................................................17

*Wild, Carter & Tipton v. Yeager*,
  No. F070631, 2017 WL 4564230 (Cal. Ct. App. Oct. 13, 2017) ........................14

iv

## INTRODUCTION

This case concerns whether Plaintiffs-Petitioners—who fled and renounced Scientology after surviving human trafficking and forced labor—must now be forced to participate in a dispute resolution proceeding conducted by Scientologists under Scientology policy.

Although the District Court found the trafficking and abuse alleged in Petitioners' complaint "surpris[ing] and shock[ing]," it concluded that the law "appears to require" that Petitioners submit to Scientology arbitration, "even where, as here, [Petitioners] allege they were forced to sign the agreements – enforceable for a billion years – under duress." ECF No. 188 (the "Initial Order") at 15. The District Court then certified its order for interlocutory review under 28 U.S.C. § 1292(b), explaining that it did not reach its conclusion to compel arbitration "lightly or easily," "the controlling legal issues present[ed] difficult questions that have not been squarely addressed by the Eleventh Circuit or United States Supreme Court," and "[t]here is certainly room for disagreement[.]" ECF No. 191 (the "Certifying Order") at 5.

The District Court agreed with Petitioners that there were two legal questions that met the requirements for certification under 28 U.S.C. § 1292(b): (1) whether Petitioners' duress and fraud-in-the-execution challenges to the arbitration agreements must be heard by a Scientology arbitrator, rather than a court; and (2)

1

whether forcing Petitioners to participate in a Scientology religious arbitration would violate their First Amendment right to leave a religion.

As the District Court found, both are purely legal questions not yet squarely addressed by the Eleventh Circuit, are the subject of disagreement in the courts, and are controlling on the issue of whether Petitioners will be compelled to arbitration. Further, deciding both questions now will not only materially advance this litigation by avoiding litigating this case in the wrong forum, but will also provide guidance to other courts on important questions that are likely to arise again. Thus, Petitioners request that the Court grant their petition for interlocutory review.

**STATEMENT OF FACTS**

On April 28, 2022, Petitioners Gawain and Laura Baxter and Valeska Paris, former members of Scientology, filed this lawsuit against several organizations within Scientology[1] and its leader, David Miscavige (collectively, "Scientology"), alleging violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1581-97. ECF No. 1. Petitioners allege that, when they

---

[1] The Corporate Defendants in this matter are the Church of Scientology International, Inc., the Religious Technology Center, Inc., IAS Administrations, Inc., the Church of Scientology Flag Service Organization, Inc., and the Church of Scientology Flag Ship Service Organization, Inc.

were still minors, employees of Scientology forced them to join Sea Org[2] and provide unpaid labor and services to Scientology, including while aboard Scientology's cruise ship, the *Freewinds*. Initial Order at 2.

Petitioners allege that, for the years that they were assigned to work on the *Freewinds* and in Sea Org, they endured highly dangerous and abusive conditions, often working between sixteen and twenty-four hours per day for little or no pay. Petitioners allege that they endured arbitrary punishment, humiliation, interrogation, imprisonment, and other acts of mental, physical, and emotional abuse at the hands of Scientology. Initial Order at 2-3. Scientology also confiscated Petitioners' passports and other documents to prevent them from escaping Scientology's abuse.

During the time that they were forced to serve Scientology, Petitioners were repeatedly presented with forms and documents that they were ordered to sign without reading. No one explained to them what the documents said, and like every order they received while in Sea Org, the orders to sign came with the threat of severe punishment if they did not comply, and so they did.

Petitioners were only able to leave Scientology—after years of forced servitude and abuse—because Laura and Valeska each became pregnant and, despite

---

[2] Sea Org is an organization within Scientology that is home to its most committed adherents. Scientologists who are not members of Sea Org are often referred to as "public" members.

hours of coercive interrogations and punishment, refused to submit to Scientology's policy of forcing members of Sea Org to have abortions. But before they would have their passports returned and be able to leave Scientology and Sea Org, they were ordered to sign more forms. At no point did Petitioners know what they were signing or have any meaningful option to not sign the documents.

On August 23, 2022, the Corporate Defendants moved to compel arbitration based on provisions contained in the thirteen different contracts Petitioners had allegedly signed during and after their forced service in Sea Org that purported to waive Petitioners' rights to bring legal claims in court, instead requiring them to bring them in a Scientology dispute resolution proceeding governed by Scientology law and policy. ECF Nos. 84-89. Petitioners opposed those motions, ECF Nos. 107-111, arguing, among other things, that the arbitration provisions at issue were signed under duress and involved fraud-in-the-execution, and that forcing Petitioners to submit to religious arbitration after they had renounced Scientology violated their First Amendment rights. *See, e.g.*, ECF No. 111 at 4-8, 9-10, 17-19. The District Court requested additional briefing on the question of who should decide the duress issue—the District Court or a Scientology arbitrator—and both sides submitted additional briefing.

On March 31, 2023, the District Court entered an order granting Defendants' motion to compel arbitration and staying the case pending the completion of

arbitration. Among other arguments, the District Court addressed Petitioners' arguments that (1) forcing Petitioners to participate in an ecclesiastical dispute resolution process when they no longer believe in Scientology would violate their First Amendment rights; and (2) the agreements were never formed, due to duress and fraud-in-the-execution.[3]

Regarding the First Amendment argument, Petitioners had cited a recent opinion wherein the California Court of Appeals held that "a party cannot bargain away her constitutional right to change religions," and thus the court could not enforce an agreement in which the plaintiffs had agreed to have all disputes decided according to Scientology arbitration because it would mean forcing them to participate in a Scientology religious proceeding. ECF No. 111 at 17-19 (citing *Bixler v. Superior Ct. for the State of Cal.*, No. B310559, 2022 WL 167792 (Cal. Ct. App. Jan. 19, 2022)). In rejecting that argument, the District Court distinguished *Bixler* because, there, the claims involved conduct that occurred after the plaintiffs had left Scientology. Initial Order at 13.

Regarding the duress argument, Petitioners had argued that the arbitration provisions were never formed because they were signed under severe duress that

---

[3] The District Court also rejected Petitioners' arguments regarding the unconscionability of the arbitration provisions and their unenforceability because they amounted to an unlawful prospective waiver of substantive rights.

began when they were children, which included imprisonment—such as being confined to their rooms under 24-hour surveillance and having their passports withheld so they could not leave—and threats of economic, reputational, and physical punishment. ECF No. 111 at 6 & 6 n.11. The District Court found this to be a "strong argument," but found the duress issue must be decided first by an arbitrator. Initial Order at 13-14.

In reaching that conclusion, the District Court rejected Petitioners' argument that duress is a contract formation issue that, under U.S. Supreme Court and Eleventh Circuit precedent, must be decided by a court. Initial Order at 14. It also held that it was bound by the Supreme Court's decision in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), which held that a party challenging arbitration must "specifically" challenge the arbitration provision. Initial Order at 14. Petitioners' brief on this issue had explained that they *did* specifically challenge the arbitration provisions on duress grounds, even though the same duress argument also applied to other provisions of the contracts at issue. The District Court rejected that argument, interpreting *Buckeye* to mean that the specific challenge to the arbitration provision must be *different* from any challenge that would apply to the rest of the

contract. Order at 14. In a footnote, the District Court drew the same conclusions regarding Petitioners' fraud-in-the-execution argument. Initial Order at 14 n.8.[4]

Although it granted the motions to compel arbitration, the District Court appeared to express misgivings about that outcome, noting that Petitioners' allegations involved "considerable mental, physical, and emotional abuse," allegations that the District Court found "surprising and shocking." *Id*. at 14-15. But it concluded that, despite this, the law "appear[ed] to require" that Petitioners' claims be resolved in arbitration. This outcome, too, the court found "surprising and shocking," *Id.* at 15, but it concluded that, under its understanding of governing law, its "hands [we]re tied." *Id.* at 15.

Petitioners moved the District Court to certify for interlocutory appeal, under 28 U.S.C. § 1292(b), two questions:[5] (1) whether Petitioners' duress and fraud-in-the-execution challenges to the arbitration agreements must be heard by a Scientology arbitrator, rather than a court; and (2) whether forcing Petitioners to

---

[4] The District Court relied on caselaw holding that *fraud-in-the-inducement* claims must be decided by the arbitrator if they are not specific to the arbitration provision. But Petitioners brought a *fraud-in-the-execution* claim, a contract formation issue which, under Eleventh Circuit precedent, must be decided by a court. *Id.*

[5] As the District Court noted, *id.* at 6-7, neither of these questions were at issue in *Garcia v. Church of Scientology Flag Serv. Org., Inc.*, No. 18-13452, 2021 WL 5074465 (11th Cir. 2021). Thus, that opinion has no bearing on this appeal.

participate in a Scientology religious arbitration violates their First Amendment right to leave their religion.[6] ECF No. 189. Defendants opposed. ECF No. 190.

On June 7, 2023, the District Court granted Petitioners' motion to certify the two questions, finding that "the two issues involve controlling questions of pure law," "there is substantial ground for difference of opinion as to these issues," and interlocutory appeal "may material[ly] advance the ultimate termination of the litigation." Certifying Order at 5 (citing 28 U.S.C. § 1292(b)).

Petitioners timely filed this petition for permission to appeal.[7]

### STATEMENT OF THE QUESTIONS PRESENTED

1. Whether Petitioners' fraud in the execution and duress challenges to the arbitration agreements must be heard by the District Court rather than a Scientology arbitrator; and

2. Whether forcing Petitioners, who have renounced Scientology, to participate in a Scientology religious arbitration violates their First Amendment right to leave their religion.

---

[6] Petitioners also asked the District Court to clarify which arbitration terms, of the 13 conflicting agreements presented by Defendants, controlled for each Petitioner. The District Court denied that motion.

[7] Plaintiffs have 10 days from the Certifying Order to petition this Court for permission to appeal. 28 U.S.C. § 1292(b). Ten days from June 7 was Saturday, June 17, and Monday, June 19, 2023, was a federal holiday.

## RELIEF SOUGHT BY PLAINTIFFS/PETITIONERS

Plaintiffs-Petitioners request that this Court grant the petition for interlocutory appeal of the District Court's order under 28 U.S.C. § 1292(b), and ultimately reverse the Initial Order compelling Scientology arbitration.

## ARGUMENT

"[A]s a rule an appellate court ought to grant permission for appeal under § 1292(b) only on (1) pure questions of law, (2) which are controlling of at least a substantial part of the case, (3) and which are specified by the district court in its order, (4) and about which there are substantial grounds for difference of opinion, (5) and whose resolution may well substantially reduce the amount of litigation necessary on remand." *McFarlin v. Conseco Servs. LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004). As that standard is satisfied here, this Court should grant the petition.

## I.    THESE ARE CONTROLLING QUESTIONS OF PURE LAW

Both the question of who—a court or a Scientology arbitrator—must decide Petitioners' duress and fraud-in-the-execution challenges and the question of whether compelling Scientology arbitration violates Petitioners' First Amendment rights are "pure, controlling question[s] of law" that depend on applying Eleventh Circuit and Supreme Court precedent interpreting the Federal Arbitration Act (FAA) and the Constitution. *McFarlin*, 381 F.3d at 1259. Neither question requires the Court to "delve beyond the surface of the record in order to determine the facts." *Id.*

9

Indeed, they do not require examining the facts at all. *See* Certifying Order at 5 (these are questions "which the appellate court 'can decide quickly and cleanly without having to study the record'"). Rather, Petitioners here seek clarification on questions of pure law: who, under the FAA, must decide whether an arbitration agreement was ever formed, given duress and fraud-in-the-execution; and does the First Amendment protect individuals who have renounced a religion from being forced to participate in a religious dispute resolution procedure governed by that religion's law. This Court regularly finds this prong satisfied when it determines that, as here, it would not have to conduct a fact-intensive inquiry. *See, e.g.*, *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1252–53 (11th Cir. 2003) (granting review of jurisdictional question); *Tucker v. Fearn*, 333 F.3d 1216, 1218 (11th Cir. 2003) (granting review of legal question regarding recovery of damages); *Love v. Delta Air Lines*, 310 F.3d 1347, 1351 (11th Cir. 2002) (granting review of statutory interpretation); *Harris v. Luckey*, 918 F.2d 888 (11th Cir. 1990) (granting review of a question involving the "law of the case" doctrine).

Furthermore, the questions at issue here avoid pitfalls previously identified by this Court. Petitioners do not ask this Court to simply review the District Court's impression of the facts at issue. *Cf. McFarlin*, 381 F.3d at 1262 (declining request to "simply … review the district court's take on the facts that reasonably could be inferred from the evidence"). Nor do Petitioners ask this Court to weigh in on the

10

District Court's use of a discretionary power. Rather, the certified questions involve non-discretionary functions of the federal courts: whether section 2 of the FAA authorizes a court to compel arbitration under an agreement that had been challenged on duress and fraud-in-the-execution grounds, and whether a court can constitutionally compel an individual to submit to arbitration by a religion she renounced years ago. *See McFarlin*, 381 F.3d at 1258 (noting a distinction between "pure" questions of law, which will satisfy the requirements of § 1292(b), and "a question of fact or matter for the discretion of the trial court"); *Rodrigues v. CNP of Sanctuary, LLC.*, 523 Fed. Appx. 628, 630 (11th Cir. 2013) (same).

Moreover, while the questions here are not "controlling" in the sense that they are dispositive on the merits, they do control whether Petitioners' claims will be addressed in arbitration or in court. *See Drummond Co. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1336 (11th Cir. 2018) (granting review when "the question is controlling of at least a substantial part of the case"). Furthermore, "considering the system-wide costs and benefits of allowing the appeal, … clear guidance from the Eleventh Circuit will aid district courts in a large number of cases." Certifying Order at 5; *see also In re Sci.-Atlanta, Inc. Sec. Litig., 2003 WL 25740734*, at *1 (N.D. Ga. Apr. 15, 2003) (in determining whether to grant an interlocutory appeal, courts may consider "whether the certified issue could have precedential value for a large number of cases"). And the fact that one of the issues involves the weighty

constitutional question of an individual's right to leave her religion further supports a grant of appeal here. *See, e.g.*, *Int'l Refugee Assistance Project v. Trump*, 404 F. Supp. 3d 946, 952 (D. Md. 2019) (certifying 1292(b) appeal, despite no controlling questions of law or substantial grounds for difference of opinion, because the constitutional claims at issue had "national significance" and were "of special consequence"); *In re Grand Jury Investigation*, 338 F. Supp. 1379, 1380 (W.D. Pa. 1972) (although the issue ordinarily would not be appealable, granting interlocutory appeal because "the protections of the Fifth Amendment… would be irrevocably breached" under the current order).

Thus, the questions presented here are controlling questions of pure law.

## II.    THE ISSUES INVOLVE SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION

This element is easily satisfied here. As the Eleventh Circuit has previously observed, "a question of law as to which we are in 'complete and unequivocal' agreement with the district court is not a proper one for § 1292(b) review." *McFarlin*, 381 F.3d at 1258 (citing *Burrell v. Bd. of Trs. of Ga. Military College*, 970 F.2d 785, 788–89 (11th Cir. 1992)). But, here, the District Court's own orders make clear that this Court's law on the issues presented is hardly "unequivocal," and, if anything, is contrary to the District Court's holding. Moreover, the parties have cited conflicting caselaw on each issue.

In the Initial Order, the District Court noted that Petitioners had offered a "strong argument" on who should decide the duress and fraud-in-the-execution issues; directed supplemental briefing on who decides the issue of duress; observed that "the law on this issue is not a model of clarity"; concluded only that compelling arbitration was "what the law appear[ed] to require"; and described the result as "surprising and shocking." Initial Order at 13-15. In the Certifying Order, the District Court emphasized that it did not come to its decision "lightly or easily," "the controlling legal issues present difficult questions that have not been squarely addressed by the Eleventh Circuit or United States Supreme Court," and there was "***certainly room for disagreement[.]***" Certifying Order at 5 (emphasis added).

A.    There is Substantial Ground for Difference of Opinion as to Who Decides Petitioners' Duress and Fraud-in-the-Execution Challenges

The District Court's decision on this issue was premised on two findings: first, that duress and fraud-in-the-execution are challenges to the validity of an arbitration agreement, not to its formation; and, second, that under *Buckeye* and *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), a challenge to an arbitration agreement must be decided by the arbitrator if "there are no factual allegations specific to the arbitration provisions themselves." Initial Order at 14. There is a substantial ground for difference of opinion on both points.

First, as to whether duress is a formation challenge, caselaw from the Supreme Court (including decisions decided after *Buckeye* and *Prima Paint*),

13

Eleventh Circuit, and California[8] demonstrate that it is. *See, e.g.*, *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 255 (2017) ("[T]he doctrine of duress, as we have elsewhere explained, involves 'unfair dealing at the contract formation stage.'"); *Morgan Stanley Cap. Grp. v. Pub. Util. Dist.No. 1 of Snohomish Cty.*, 554 U.S. 527, 547 (2008) (identifying duress as a "traditional grounds for the abrogation of the contract" because it involves "unfair dealing at the contract formation stage"); *AT&T Mobility v. Concepcion LLC*, 563 U.S. 333, 353 (2011) (Thomas, J., concurring) ("the FAA requires that an agreement to arbitrate be enforced unless a party successfully challenges the formation of the arbitration agreement, such as by proving fraud or duress"); *Coleman v. Prudential Bache Secs., Inc.*, 802 F.2d 1350, 1352 (11th Cir. 1986) ("coercion" is an issue that "go[es] to the formation of the entire contract"); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 637 F.2d 391, 398 (5th Cir. Feb. 19, 1981) ("duress" is an issue that "go[es] to the formation of the entire contract"); *Martinez-Gonzalez v. Elkhorn Packing Co., LLC*, 2019 WL 13119015, *5 (N.D. Cal. Mar. 11, 2019) ("[c]laims of economic duress and undue influence are issues concerning contract formation" in California); *Synnex Corp. v. Wattles*, 2012 WL 5524953, at *4 (N.D. Cal. 2012) (describing "economic duress"

---

[8] The parties agreed below that California law governs the interpretation and application of the arbitration agreement, and the District Court applied California law. Initial Order at 7.

14

as a "defense[] to contract formation" under California law); *Wild, Carter & Tipton v. Yeager*, No. F070631, 2017 WL 4564230, at \*20 (Cal. Ct. App. Oct. 13, 2017) (explaining that "[d]uress is a defense to contract formation" because it "negates the element of intent"). *See also Bruni v. Didion*, 160 Cal. App. 4th 1272, at 1284 (Cal. Ct. App. 2008) ("Where … a party's apparent assent to a written contract is negated …, there is simply no arbitration agreement to be enforced.") (emphasis removed).

Conversely, Defendants in this matter have cited to cases from the Eleventh Circuit and elsewhere that they claim hold that duress must be decided by an arbitrator. *See, e.g.*, ECF No. 181 at n.3 (citing *Chastain v. Robinson–Humphrey Co., Inc.*, 957 F.2d 851, 854 (11th Cir. 1992); *Benoay v. Prudential Bache Sec., Inc.*, 805 F.2d 1437, 1441 (11th Cir. 1986); *Cheruvoth v. SeaDream Yacht Club Inc.*, No. 20-14450, 2021 WL 4595177, at \*3 (11th Cir. Oct. 6, 2021); *Hill v. Wackenhut Servs. Int'l*, 865 F. Supp. 2d 84, 97–98 (D.D.C. 2012)). The District Court agreed with Defendants on this crucial point, citing *Merrill Lynch* for the proposition that duress must be decided by the arbitrator, even though that case itself acknowledged that duress is a formation issue.[9] Initial Order at 14 (citing *Merrill Lynch*, 637 F.2d

---

[9] *Merrill Lynch* and the other older Eleventh Circuit cases were decided well before the Supreme Court confirmed in 2010 that formation issues must be decided by a court. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299-301 (2010); *see also Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 991 (11th Cir. 2012) (holding after *Granite Rock* that a court must resolve "any formation challenge to the contract containing the arbitration clause" before determining

at 398). That dispute alone is sufficient for this Court to find the difference of opinion prong satisfied in deciding whether to grant Petitioners' petition.

Likewise, although the District Court held that fraud-in-the-execution is not a formation issue, Petitioners cited to California caselaw holding that it is. *See* ECF No. 111 at 9 (citing *Najarro v. Super. Ct. of San Bernadino Cnty.*, 285 Cal. Rptr. 3d 700, 714 (Cal Ct. App. 2021)). In *Najarro*, the court explained that claims of fraud-in-the-execution are not arbitrable because "when fraud in the execution is involved, 'the parties have not agreed to arbitrate any controversy.'" 285 Cal. Rptr. 3d at 717. The Eleventh Circuit has similarly confirmed as much. *See Solymar Invests., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 994-95 (11th Cir. 2012); *Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998, 1000 (11th Cir. 1986). Again, that difference of opinion alone is sufficient to find this prong of the analysis satisfied.

There is also a need for guidance as to the interpretation and application of *Buckeye* and *Prima Paint* where, as here, a party challenges an arbitration provision on grounds that also apply to the contract as a whole. The District Court held, without citing any authority, that when the Supreme Court said in *Buckeye* that a challenge

---

whether an arbitrator should decide threshold issues under *Buckeye* and *Prima Paint*). Thus, although those older cases recognized that duress is a formation question, they held that it must be decided by the arbitrator. It is that ultimate conclusion that the District Court presumably relied on here.

must be "specific" to the arbitration provision to succeed, it meant that the challenge must apply *only* to the arbitration provision. Initial Order at 14.

But, in the closely analogous context of a delegation clause within a larger arbitration agreement, this Court has held that a challenge need not be unique to the clause to be "specific" to it under *Buckeye*.[10] *See Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331, 1335 (11th Cir. 2016) (challenge to delegation clause on grounds that arbitral forum did not exist was specific to that clause even though it was the same challenge raised to the entire arbitration agreement); *Tuckman v. JPMorgan Chase Bank, N.A.*, 2021 WL 3357953, at *2 n.5 (11th Cir. Aug. 3, 2021) (finding a "specific" challenge to delegation clause even though its enforceability "turn[ed] on the same principles of law as the enforceability of the arbitration clause generally"). Furthermore, this Court has never squarely applied that holding to an *arbitration provision* within a larger contract, and thus this question is one of first impression in this Circuit, further supporting interlocutory review. *See Consol. Companies, Inc. v. Union Pac. R. Co.*, No. CIV.A. 98-1804L-O, 2006 WL 950198, at *1 (W.D. La. Apr.

---

[10] In *Rent-A-Center West, Inc. v. Jackson*, the Supreme Court applied *Buckeye*'s specific challenge rule to a clause delegating threshold issues of arbitrability to the arbitrator (a "delegation clause") nested within a larger arbitration agreement. 561 U.S. 63, 72 (2010). The Court explained that such a clause was "simply an additional, antecedent agreement" to arbitrate, and that *Buckeye* applied and required that the delegation clause be analyzed separately from the rest of the agreement. *Id.* Thus, cases addressing whether a party has specifically challenged a delegation clause under *Rent-A-Center* are grappling with the same issue in this case.

11, 2006) (noting an issue was of first impression in concluding "there are substantial grounds for differences of opinion."); *Bennett v. Jefferson Cnty., Ala.*, No. 2:14-CV-0213-SLB, 2014 WL 12984712, at *2 (N.D. Ala. Dec. 1, 2014) (same).

Moreover, there is substantial ground for difference of opinion, because myriad caselaw from other circuits rejects the District Court's interpretation of *Buckeye*, holding that a challenge need not be unique to the challenged provision to be "specific." *See, e.g.*, *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1271 (9th Cir. 2006) ("the federal court must decide claims attacking the validity of the arbitration provision even if substantive state law requires an examination of the making of the entire contract as part of that analysis"); *Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*, 232 Cal. Rptr. 3d 282, 290-91 (Cal. Ct. App. 2018) (challenge need not be "*different from* the plaintiff's challenge to the entire contract" to be "specific") (emphasis in original); *see also Gibbs v. Sequoia Cap. Ops., LLC*, 966 F.3d 286, 291 (4th Cir. 2020) ("courts have construed a party's argument that the 'delegation clause suffers from the same defect as the arbitration provision' to be a sufficient challenge to the delegation provision itself"); *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226-27 (3d Cir. 2018) (party can rely on same challenge to delegation clause and other arbitration agreement provisions). Thus, there are clear grounds for a difference of opinion on this issue: this Court not squarely decided it and the District Court's decision is at odds with decisions of other courts of appeal.

B.    There is Substantial Ground for Difference of Opinion as to Whether the First Amendment Precludes Compelling Arbitration Here

Although it dismissed the argument that sending this case to Scientology arbitration would violate Petitioners' First Amendment rights, the District Court acknowledged that the California Court of Appeals has held the opposite. Initial Order at 12-13 (citing *Bixler*, No. B310559, 2022 WL 167792, at *12-14). The divergence between the District Court's Order and the *Bixler* case alone—especially given that California law governs litigation over the arbitration issue—is sufficient for this Court to find a substantial ground for difference of opinion.

Moreover, while the District Court distinguished *Bixler* on the ground that "[t]he conduct alleged here occurred while Petitioners were members of [Scientology]" and "do[es] not implicate conduct after separation," Initial Order at 13, the *Bixler* court did not limit its holding to conduct that occurred after the plaintiff had already left Scientology, *see Bixler*, 2022 WL 167792, at *11 n.20. Furthermore, Petitioners have found no caselaw stating that that distinction is dispositive, and Supreme Court precedent prohibiting implicit waivers of First Amendment rights applies without regard to the timing of Petitioners' claims, *see Curtis Pub. Co. v. Butts*, 388 U.S. 130, 145 (1967) (court will not find waiver of First Amendment rights absent "clear and compelling" relinquishment). Thus, this too is both an issue of first impression in the Eleventh Circuit and an issue on which there is a split between the District Court and other appellate courts.

19

## III.    RESOLVING THESE QUESTIONS NOW WILL MATERIALLY ADVANCE THE TERMINATION OF THIS LITIGATION

A question satisfies the "materially advance the termination of this litigation" prong if its resolution "would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin*, 381 F.3d at 1259. As the District Court noted, that is clearly the case here. On the one hand, "[i]f the Eleventh Circuit reverses, … it will save the parties the expense and burden of arbitration – which may potentially take years[.]" Certifying Order at 5. Ensuring the parties are in the appropriate forum, sooner rather than later, eliminates the risk of litigating this case twice. On the other hand, if this Court affirms, the parties and the arbitrator will have this Court's guidance on several key issues in the arbitration, thus streamlining the proceeding. Guidance on the First Amendment is especially necessary because, if the First Amendment issue is decided only after Petitioners are forced to participate in Scientology arbitration, it will be too late to prevent a violation of their rights. *See In re Grand Jury Investigation*, 338 F. Supp. 1379, 1380 (W.D. Pa. 1972). Finally, as the District Court noted, granting an interlocutory appeal here may "conserve judicial resources in the longer term by resolving important and oft-arising legal questions." Certifying Order at 6 (citing *Islam v. Lyft, Inc.*, 2021 WL 2651653, at *5 (S.D.N.Y. June 28, 2021)).

## CONCLUSION

For the foregoing reasons, this Court should grant this petition.

Dated: June 20, 2023                    Respectfully submitted,


                                        */s/ Theodore Leopold*
                                        Theodore Leopold (Fla. Bar No.
                                        705608)
                                        COHEN MILSTEIN SELLERS
                                        & TOLL PLLC
                                        11780 U.S. Highway One,
                                        Suite N500
                                        Palm Beach Gardens, FL 33408
                                        Telephone: (561) 515-1400
                                        tleopold@cohenmilstein.com

                                        Shelby Leighton
                                        PUBLIC JUSTICE
                                        1620 L St. NW, Suite 630
                                        Washington, DC 20036
                                        Telephone: (202) 797-8600
                                        sleighton@publicjustice.net

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(A)</u>

(1) This brief complies with the type-volume limitations of Fed. R. App. P. 5(c)(1) because it contains 4,838 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), as calculated by the word counting feature of Microsoft Office 2010.

(2) This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: June 20, 2023                         */s/ Theodore Leopold*
                                             Theodore Leopold

## CERTIFICATE OF SERVICE

I, Theodore Leopold, do hereby certify that a copy of the attached petition was sent to all counsel for Defendants listed below by electronically mailing the same on June 20, 2023. Furthermore, after I have received a stamped and docketed version of this petition from this Court, I will cause a copy to sent to the individuals listed below by electronic and regular U.S. mail.

Gustavo J. Membiela
Winston & Strawn, LLP
200 S. Biscayne Boulevard, Suite 2400
Miami, FL 33131-5341
Tel: 305.910.0717
gmembiela@winston.com

William H. Forman
Winston & Strawn, LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Tel: 213.615.1992
whforman@winston.com

Christopher G. Oprison (FBN: 0122080)
DLA Piper, LLP (US)
200 South Biscayne Boulevard
Suite 2500
Miami, FL 33131-5341
Tel: 305.423.8500
chris.oprison@dlapiper.com

Charles M. Harris (FBN: 967459)
Bridget A. Merenda (FBN: 320500)
Trenam Law
200 Central Avenue, Suite 1600
St. Petersburg, FL 33701
Tel: 727.896.7171

charris@trenam.com
bamerenda@trenam.com
gkesinger@trenam.com
ranctil@trenam.com

David B. Weinstein (FBN: 604410)
Brian C. Porter (FBN: 0120282)
Greenberg Traurig, P.A.
101 E. Kennedy Blvd., Suite 1900
Tampa, FL 33602
Tel.: (813) 318-5700
weinsteind@gtlaw.com
brian.porter@gtlaw.com

Robert V. Potter, Jr. (FBN: 363006)
Johnson Pope Bokor Ruppel & Burns
311 Park Place Blvd., #300
Clearwater, FL 33759
Tel: 727.461.1818
BobP@jpfirm.com

BRIGID CECH SAMOLE (FBN: 730440)
brigid.cechsamole@gtlaw.com
Greenberg Traurig, P.A.
333 SE 2nd Ave., Suite 4400
Miami, FL 33131
Tel.: (305) 579-0500

William J. Schifino, Jr., Esq.
Florida Bar No. 564338
Justin P. Bennett, Esq.
Florida Bar No. 112833
GUNSTER, YOAKLEY & STEWART, P.A.
401 E. Jackson Street, Suite 1500
Tampa, Florida 33602
Telephone: (813) 228-9080
Facsimile: (813) 228-6739
Email- wschifino@gunster.com
Email- jbennett@gunster.com

Joseph M. Terry
Krystal C. Durham
Williams & Connolly LLP
680 Maine Street, S.W.
Washington, D.C. 20024
(202) 434-5000
jterry@wc.com
kdurham@wc.com

Dated: June 20, 2023                    */s/ Theodore Leopold*
                                        Theodore Leopold

# Appendix A

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

GAWAIN BAXTER, LAURA
BAXTER, and VALESKA PARIS,

      Plaintiffs,

v.                                                                Case No: 8:22-cv-986-TPB-JSS

DAVID MISCAVIGE, CHURCH OF
SCIENTOLOGY INTERNATIONAL,
INC., RELIGIOUS TECHNOLOGY
CENTER, INC., IAS
ADMINISTRATIONS, INC.,
CHURCH OF SCIENTOLOGY FLAG
SERVICE ORGANIZATION, INC.,
and CHURCH OF SCIENTOLOGY
FLAG SHIP SERVICE
ORGANIZATION, INC.,

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' "MOTION TO CERTIFY THE COURT'S MARCH 31, 2023 ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B) AND CLARIFICATION"

This matter is before the Court on Plaintiffs' "Motion to Certify the Court's

March 31, 2023 Order for Interlocutory Appeal Under 28 U.S.C. § 1292(b) and

Clarification," filed on April 28, 2023.  (Doc. 189).  On May 12, 2023, Defendants

filed a combined response in opposition.  (Doc. 190).  Upon review of the motion,

response, court file, and record, the Court finds as follows:

### Background

Plaintiffs are former members of the Church of Scientology.  They were introduced to Scientology as children by their parents, and they remained active in Scientology as adults.  As practicing Scientologists, they served for over a decade as members of the Sea Organization ("Sea Org"), which is described as a religious order within the larger Scientology religion.  Plaintiffs bring this action pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1581-1597, alleging that Defendants coerced persons, including Plaintiffs, to join Sea Org and provide unpaid labor and services on a 10,328-ton cruise ship vessel known as the *Freewinds*, where Defendants knowingly obtained valuable benefits including financial enrichment.  Plaintiffs allege that *Freewinds* frequently sailed to nations where anti-trafficking measures were weak to avoid legal repercussions, and it has never docked at any port in the United States or even entered the territorial waters of the United States.

Plaintiffs allege they were forced by their parents to join the Church of Scientology as children, where they were "indoctrinated, manipulated, and pressured into coercive circumstances from a young age."  (Doc. 79 at ¶ 3).  They now contend that Scientology was "a world filled with abuse, violence, intimidation, and fear."  (*Id.* at ¶ 1).  For a time, Plaintiffs were assigned to work on *Freewinds* under highly dangerous and abusive conditions, often working between 16-24 hours a day.  In the amended complaint, Plaintiffs detail numerous incidents of punishment, humiliation, interrogation, and imprisonment that occurred while they

were members of Sea Org, including various acts of mental, physical, and emotional abuse.

As members of Scientology, Plaintiffs signed pledges of "eternal service" to the religion and its goals.[1]  In enrollment agreements signed in 2003 and 2004, Plaintiffs agreed to resolve disputes with the Church through binding religious arbitration.  Plaintiffs were between the ages of roughly 19 and 25 – relatively young adults – when these arbitration agreements were signed.  Gawain Baxter was born April 9, 1982.  (Doc. 149 at 14).  Laura Baxter was born on October 25, 1984.  (*Id.*).  And Valeska Paris was born in 1978.  (*Id.*).  Plaintiffs later left *Freewinds*, and they executed agreements to arbitrate then as well – Paris in 2007, and the Baxters in 2012.  Paris, when she was roughly 31 years of age, signed another agreement and release in 2009 that included an arbitration provision.  Similarly, the Baxters signed additional agreements, which included arbitration provisions, in December 2015 when they were roughly 33 and 31 years of age respectively.

On March 31, 2023, the Court entered an order compelling arbitration and staying the case pending arbitration.  (Doc. 188).  Plaintiffs now request that the

---

[1] In an affidavit supporting the motions to compel arbitration, Sarah Heller, a staff member of Church of Scientology Flag Service Organization, explains that the Sea Org is the religious order of Scientology and is composed of the most dedicated Scientologists – individuals who have dedicated themselves to the Sea Org "for a billion years," reflecting "both their dedication to their religion and their awareness of themselves as immortal spiritual beings who have lived countless lives and who will live again and again."  (Doc. 84-1 at ¶ 15).

Court certify its decision compelling arbitration for interlocutory appeal and seek
clarification. (Doc. 189). Defendants oppose the motion. (Doc. 190).

### Legal Standard

Interlocutory appeals under 28 U.S.C. § 1292(b) are designed specifically to
resolve "abstract legal issues or issues of pure law." *PFM Air, Inc. v. Dr. Ing. hc. F.
Porsche A.G.*, 751 F. Supp. 2d 1264, 1269 (M.D. Fla. 2010) (internal quotations
omitted). "When a district judge, in making in a civil action an order not otherwise
appealable under this section, shall be of the opinion that such order involves [1] a
controlling question of law [2] as to which there is substantial ground for difference
of opinion and [3] that an immediate appeal from the order may materially advance
the ultimate termination of the litigation, he shall so state in writing in such order."
28 U.S.C. § 1292(b). The party seeking the appeal bears the burden to establish
that it has met all three elements. *Gurzi v. Penn Credit, Corp.*, 6:19-cv-823-Orl-
31EJK, 2020 WL 3288016, at *1 (M.D. Fla. June 18, 2020).

### Analysis

Plaintiffs request that the Court certify two questions for interlocutory
review under 28 U.S.C. § 1292(b) – (1) whether Plaintiffs' fraud in the execution and
duress challenges to the arbitration agreements must be heard by a Scientology
arbitrator, rather than the district court; and (2) whether forcing Plaintiffs to
participate in a Scientology religious arbitration violates their First Amendment
right to leave their religion.

Upon review, the Court finds that the issues presented by Plaintiffs satisfy the standard under § 1292(b).  After considering the parties' positions, the Court finds that the two issues involve controlling questions of pure law, which the appellate court "can decide quickly and cleanly without having to study the record." *See McFarlin v. Conseco Servs. LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004). Although the questions are not "controlling" in the sense that reversal of the March 31, 2023, Order would terminate the action, considering the system-wide costs and benefits of allowing the appeal, the Court believes that clear guidance from the Eleventh Circuit will aid district courts in a large number of cases.  *See Islam v. Lyft, Inc.*, 2021 WL 2651653, at *3 (S.D.N.Y. June 28, 2021).

The Court also finds that there is substantial ground for difference of opinion as to these issues.  The Court emphasizes that it did not come to its decision to compel arbitration lightly or easily, and the controlling legal issues present difficult questions that have not been squarely addressed by the Eleventh Circuit or United States Supreme Court.  There is certainly room for disagreement, even if the Court ultimately found Defendants to have the stronger position.

Finally, the Court finds that interlocutory appeal "may material advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  If the Eleventh Circuit hears the appeal and affirms, this case will remain stayed pending resolution of the arbitration proceedings.  If the Eleventh Circuit reverses, holding that Plaintiffs cannot be compelled to arbitrate, it will save the parties the expense and burden of arbitration  – which may potentially take years – and allow the case to proceed to

resolution in the district court.  In addition, considering the "system-wide costs and benefits of allowing the appeal," including "the impact that an appeal will have on other cases," an interlocutory appeal may not only resolve this case but also "conserve judicial resources in the longer term by resolving important and oft-arising legal questions."  *See Islam*, 2021 WL 2651653, at *5 (internal quotations and citations omitted).

Based on the foregoing, the Court concludes that each of the § 1292(b) requirements for an interlocutory appeal are met.  Therefore, in its discretion, the Court chooses to certify the March 31, 2023, Order to allow the interlocutory appeal of the discussed controlling questions of law – (1) whether Plaintiffs' fraud in the execution and duress challenges to the arbitration agreements must be heard by a Scientology arbitrator, rather than the district court; and (2) whether forcing Plaintiffs to participate in a Scientology religious arbitration violates their First Amendment right to leave their religion.  If the Eleventh Circuit agrees to hear this appeal, however, it "may address any issue fairly included within the certified order."  *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996).

The Court declines to clarify which arbitration provisions govern or "identify which terms control the parties' agreement" by resolving any alleged inconsistencies between the agreements.  The March 31, 2023, Order speaks for itself on this and other issues.

According, it is hereby

**ORDERED, ADJUDGED,** and **DECREED**:

1. Plaintiffs' "Motion to Certify the Court's March 31, 2023 Order for
   Interlocutory Appeal Under 28 U.S.C. § 1292(b) and Clarification" (Doc.
   189) is **GRANTED IN PART** and **DENIED IN PART**.

2. The motion is **GRANTED** to the extent that the Court's March 31, 2023,
   Order is certified for an interlocutory appeal pursuant to 28 U.S.C. §
   1292(b).

3. The motion is otherwise **DENIED**.

**DONE and ORDERED** in Chambers, in Tampa, Florida, this <u>7th</u> day of
June, 2023.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**

# Appendix B

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

GAWAIN BAXTER, LAURA
BAXTER, and VALESKA PARIS,

      Plaintiffs,

v.                                   Case No: 8:22-cv-986-TPB-JSS

DAVID MISCAVIGE, CHURCH OF
SCIENTOLOGY INTERNATIONAL,
INC., RELIGIOUS TECHNOLOGY
CENTER, INC., IAS
ADMINISTRATIONS, INC.,
CHURCH OF SCIENTOLOGY FLAG
SERVICE ORGANIZATION, INC.,
and CHURCH OF SCIENTOLOGY
FLAG SHIP SERVICE
ORGANIZATION, INC.,

      Defendants.

_____/

### <u>ORDER ON MOTIONS TO COMPEL ARBITRATION AND TO DISMISS</u>

     This matter is before the Court on several motions:

> "Defendant Church of Scientology Flag Ship Service
> Organization, Inc.'s Motion to Compel Arbitration, or in the
> Alternative, to Dismiss the Complaint" (Doc. 84);

> "Defendant Church of Scientology Flag Service
> Organization, Inc's Motion to Compel Arbitration; or in the
> Alterative, to Dismiss Pursuant to Rule 12(b)(6)" (Doc. 85);

> "Defendant IAS Administration, Inc.'s Motion to Dismiss
> Plaintiffs' Complaint for Lack of Personal Jurisdiction, to
> Compel Arbitration, or Dismiss for Failure to State a Claim"
> (Doc. 87);

> "Defendant Church of Scientology International, Inc.'s
> Motion to Dismiss or Compel Arbitration" (Doc. 88); and

"Defendant Religious Technology Center, Inc.'s Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction or, Alternatively, to Compel Arbitration or, Alternatively, Dismiss for Failure to State a Claim" (Doc. 89).

On September 13, 2022, Plaintiffs Gawain Baxter, Laura Baxter, and Valeska Paris filed responses in opposition to the motions. (Docs. 107; 108; 109; 110; 111; 113). The Court held a hearing to address the motions on November 17, 2022. (Docs. 148; 149). At the direction of the Court (Doc. 168), the parties provided additional briefing on the issue of duress (Docs. 174; 175; 180; 181). After reviewing the motions, responses, supplemental briefing, court file, and the record, the Court finds as follows:

## <u>Background</u> [1]

Plaintiffs are former members of the Church of Scientology. They were introduced to Scientology as children by their parents, and they remained active in Scientology as adults. As practicing Scientologists, they served for over a decade as members of the Sea Organization ("Sea Org"), which is described as a religious order within the larger Scientology religion. Plaintiffs bring this action pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1581-1597, alleging that Defendants coerced persons, including Plaintiffs, to join Sea Org and provide unpaid labor and services on a 10,328-ton cruise ship vessel known as the *Freewinds*, where Defendants knowingly obtained valuable benefits including

---

[1] The Court accepts as true the facts alleged in the amended complaint (Doc. 79) for purposes of ruling on the pending motions. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."). By accepting the facts as true for purposes of this motion, as is required by law, the Court has not made factual findings in favor of, or against any party.

financial enrichment.  Plaintiffs allege that *Freewinds* frequently sailed to nations where anti-trafficking measures were weak to avoid legal repercussions, and it has never docked at any port in the United States or even entered the territorial waters of the United States.

Plaintiffs allege they were forced by their parents to join the Church of Scientology as children, where they were "indoctrinated, manipulated, and pressured into coercive circumstances from a young age." (Doc. 79 at ¶ 3).  They now contend that Scientology was "a world filled with abuse, violence, intimidation, and fear." (*Id*. at ¶ 1).  For a time, Plaintiffs were assigned to work on *Freewinds* under highly dangerous and abusive conditions, often working between 16-24 hours a day.  In the amended complaint, Plaintiffs detail numerous incidents of punishment, humiliation, interrogation, and imprisonment that occurred while they were members of Sea Org, including various acts of mental, physical, and emotional abuse.

As members of Scientology, Plaintiffs signed pledges of "eternal service" to the religion and its goals.[2]  In enrollment agreements signed in 2003 and 2004, Plaintiffs agreed to resolve disputes with the Church through binding religious arbitration.  Plaintiffs were between the ages of roughly 19 and 25 – relatively young adults – when these arbitration agreements were signed.  Gawain Baxter was born April 9, 1982. (Doc. 149 at 14).  Laura Baxter was born on October 25, 1984.  (*Id*.).  And Valeska

---

[2] In an affidavit supporting the motions to compel arbitration, Sarah Heller, a staff member of Church of Scientology Flag Service Organization, explains that the Sea Org is the religious order of Scientology and is composed of the most dedicated Scientologists – individuals who have dedicated themselves to the Sea Org "for a billion years," reflecting "both their dedication to their religion and their awareness of themselves as immortal spiritual beings who have lived countless lives and who will live again and again."  (Doc. 84-1 at ¶ 15).

Paris was born in 1978.  (*Id.*).  Plaintiffs later left *Freewinds*, and they executed

agreements to arbitrate then as well – Paris in 2007, and the Baxters in 2012.  Paris,

when she was roughly 31 years of age, signed another agreement and release in 2009

that included an arbitration provision.  Similarly, the Baxters signed additional

agreements, which included arbitration provisions, in December 2015 when they were

roughly 33 and 31 years of age respectively.

## Legal Standard

Defendants have asserted several arguments in support of dismissal, including

lack of personal jurisdiction.  All Defendants have moved to dismiss or to compel

arbitration of Plaintiffs' claims, relying on the various agreements signed by Plaintiffs

that include arbitration provisions.  Ordinarily, the Court would consider the personal

jurisdiction arguments first.  However, when multiple arguments have been presented

in support of dismissal, a district court may "bypass questions of subject-matter and

personal jurisdiction, when considerations of convenience, fairness, and judicial

economy so warrant […]."  *Graddy v. Carnegie Acad., LLC*, No. 1:21-cv-00639-SDG,

2022 WL 903193, at \*3 (N.D. Ga. Mar. 28, 2022) (quoting *Ruhrgas AG v. Marathon Oil

Co.*, 526 U.S. 574, 585 (1999)).  "Arbitration provisions are a species of forum selection

clauses."  *VI MedRx, LLC v. Hurley Consulting Assocs., Ltd.*, No. 3:11-cv-1034-J-

37TEM, 2012 WL 10494, at \*2 (M.D. Fla. Jan. 3, 2012) (internal quotation omitted).

As such, the Court considers the motions to compel arbitration at the outset.  *See id.* at

\*3 n.8.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, "embodies a liberal

federal policy favoring arbitration agreements."  *Caley v. Gulfstream Aerospace Corp.*,

428 F.3d 1359, 1367 (11th Cir. 2005). In fact, the Eleventh Circuit Court of Appeals has "recognized that the FAA creates a presumption of arbitrability such that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (internal quotations omitted). "Under the FAA, a party seeking to compel arbitration must demonstrate that (a) the plaintiff entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles and (b) the claims before the court fall within the scope of that agreement." *Garcia v. Church of Scientology Flag Serv. Org., Inc.*, No. 8:13-cv-220-T-27TBM, 2015 WL 10844160, at *3 (M.D. Fla. Mar. 13, 2015) (internal quotations omitted)). When determining whether the contract is enforceable, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Id.* (quoting *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

## <u>Analysis</u>

In this case, Defendants have presented evidence of presumptively valid arbitration agreements signed by Plaintiffs.[3] The agreements broadly cover "any

---

[3] The Court "may consider a document attached to a motion to dismiss . . . if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). Multiple arbitration agreements were signed by Plaintiffs over the course of several years, many of which were attached to the motions. The agreements were also discussed extensively during the hearing that was held in this matter on November 17, 2002. It should be noted that there is some variation in the wording of the various agreements. However, these differences do not render the arbitration clauses unenforceable. The agreements must include the essential terms such that Plaintiffs had some idea of what disputes would be subject to arbitration, along with the manner of effecting arbitration. *See Garcia v. Church of Scientology Flag Serv. Org., Inc.*, No. 8:13-cv-220-T-27TBM, 2015 WL 10844160, at *8 (M.D. Fla. Mar. 13, 2015). The agreements here do both things.

dispute, claim or controversy" between Plaintiffs and the Church of Scientology and related individuals and entities, and Plaintiffs agreed to resolve disputes "solely and exclusively through Scientology's Internal Ethics, Justice and binding religious arbitration procedures." The agreements provide for "binding religious arbitration in accordance with the arbitration procedures of Church of Scientology International."

Plaintiffs do not contest the authenticity of the arbitration documents. Rather, they oppose submitting this dispute to arbitration on other grounds, including that (1) the arbitration agreements are unconscionable and not enforceable by third parties;[4] (2) the arbitration provisions amount to an unlawful prospective waiver of substantive rights; (3) forcing Plaintiffs to participate in an ecclesiastical dispute resolution process when they no longer believe in Scientology would violate their First Amendment rights; and (4) the agreements were never formed due to duress, fraud, and lack of mutual assent.

Defendants are not strangers to the court system. In fact, the validity of the exact arbitration agreements at issue here was recently determined in Defendants' favor in an unrelated case by another judge on this Court. *See Garcia*, 2015 WL 10844160, at *8. On appeal, the Eleventh Circuit held that the arbitration agreements were enforceable. *See Garcia v. Church of Scientology Flag Serv. Org., Inc.*, No. 18-13452, 2021 WL 5074465, at *6-7 (11th Cir. 2021). Plaintiffs have raised additional arguments here that were not made in *Garcia* to support their challenge to the enforceability of the arbitration agreements. Those arguments will be considered –

---

[4] Although Plaintiffs argue that the arbitration provisions are not enforceable by third parties, the agreements reflect an intent to arbitrate disputes and claims against the Church and its related entities and individuals.

but the Court is required to consider them with the Eleventh Circuit's very recent opinion in *Garcia* firmly in mind.

### Unconscionability

The Court initially notes that when these arbitration agreements were challenged by other plaintiffs in the *Garcia* cases, unconscionability was one of the arguments that was specifically rejected by the District Court, and that determination was affirmed by the Eleventh Circuit. Those decisions relied on Florida law. *See Garcia*, 2021 WL 5074465, at *16 n.4 (discussing Florida choice-of law). Here, the parties acknowledge that California law governs this dispute. But at least with the major issues involving arbitration, California law and Florida law appear to be in agreement.

"[T]o invalidate an arbitration clause, a party must establish both procedural and substantive unconscionability." *Garcia*, 2015 WL 10844160, at *5; *see also Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (Cal. 2000) (explaining both procedural and substantive unconscionability must be present for a court to exercise its discretion to refuse to enforce a contract or clause). "Procedural unconscionability 'relates to the manner in which the contract was entered,' and substantive unconscionability asks whether the terms of the agreement are themselves too unfair to enforce." *Garcia*, 2021 WL 5074465, at *6.

When evaluating whether an agreement is unconscionable, both California and Florida employ a balancing, or "sliding scale," approach. *See, e.g., Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 55 Cal.4th 223, 247 (Cal. 2012); *Armendariz*, 24 Cal.4th at 114; *Basulto v. Hialeah Auto.,* 141 So. 3d 1145, 1159 (Fla.

2014). "[B]oth the procedural and substantive aspects of unconscionability must be present, although not necessarily to the same degree, and both should be evaluated interdependently rather than as independent elements." *Id*. at 1161. Ultimately, "[t]he overarching unconscionability question is whether an agreement is imposed in such an unfair fashion and so unfairly one-sided that it should not be enforced." *OTO, L.L.C. v. Kho*, 8 Cal.5th 111, 124 (Cal. 2019). "The burden of proving unconscionability rests upon the party asserting it." *Id*. at 126.

Procedural Unconscionability

Plaintiffs contend that the agreements are procedurally unconscionable because they were contracts of adhesion and provided no procedures to govern an arbitration. "The central question with respect to the procedural component of unconscionability 'is whether the complaining party lacked a meaningful choice when entering into the contract.'" *Garcia*, 2015 WL 10844160, at *5 (quoting *Basulto*, 141 So. 3d at 1157 n.3). A contract of adhesion strongly indicates that the contract is procedurally unconscionable, but "the presence of an adhesion contract alone does not require a finding of procedural unconscionability." *Garcia*, 2021 WL 5074465, at *6 (quoting *VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc.*, 912 So. 2d 34, 40 (Fla. 4th DCA 2005)). Rather, the important question is whether the circumstances created such oppression or surprise that closer scrutiny of the fairness of the agreement is required. *OTO, L.L.C.*, 8 Cal.5th at 126.

In support of their procedural unconscionability argument, Plaintiffs have presented evidence as to the adhesive nature of the arbitration agreements, "[b]ut adhesiveness alone is insufficient to prove 'any degree of procedural

unconscionability.'" *Garcia*, 2021 WL 5074465, at *9 (quoting *Kendall Imps., LLC v. Diaz*, 215 So. 3d 95, 110 (Fla. 3d DCA 2017)). Rather, a plaintiff must demonstrate oppression or surprise. Plaintiffs signed multiple agreements containing arbitration provisions over the years, each initialing next to the arbitration provisions themselves. A failure to explain arbitration does not justify a refusal to enforce an arbitration agreement. *See, e.g.*, *Nguyen v. Applied Med. Res. Corp.*, 4 Cal. App. 5th 232, 249 (Cal. Ct. App. 2016). In addition, considering the factors related to oppression, the Court finds that Plaintiffs have failed to put forth sufficient argument or evidence to demonstrate unfair oppression related to the arbitration provisions.[5]

As previously noted, these exact arbitration agreements have been reviewed by the Eleventh Circuit, which concluded that the agreements were not procedurally unconscionable. *Garcia*, 2021 WL 5074465, at *6-7. There are no material factual distinctions that would require a different result here, considering that California law and Florida law are substantially similar or identical on this and other issues related to arbitration. Consequently, procedural unconscionability has not been established here.

<u>Substantive Unconscionability</u>

Even if the Court were to find the agreements were procedurally unconscionable to some degree, Plaintiffs have not demonstrated that the agreements are

---

[5] "The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney." *OTO, L.L.C.*, 8 Cal.5th at 126-27 (quoting *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1348 (Cal. Ct. App. 2015)).

substantively unconscionable.  Plaintiffs attempt to distinguish their case by arguing the *Garcia* Court did not expressly decide whether the agreements were substantively unconscionable because they lacked mutuality.  But this argument is not persuasive. First and most importantly, it is not clear that these agreements include only unilateral, rather than bilateral obligations to arbitrate disputes.[6]  Rather, it appears that the terms of at least some of the agreements created a mutual agreement to arbitrate all Scientology-related disputes.   *See, e.g.*, *Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1473 (Cal. Ct. App. 2009); *Nguyen*, 4 Cal. App. 5th at 251-53 (use of words "I agree" did not destroy bilateral nature of agreement to arbitrate disputes). Second, even if there was not mutuality, California courts recognize that a contract can provide for one-sided arbitration when there is a legitimate need without rendering the agreement unconscionable.  *See, e.g.*, *Armendariz*, 24 Cal.4th at 117; *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 855 (Cal. Ct. App. 2001). Plaintiffs have failed to adequately explain why any alleged lack of mutuality here should render the agreements invalid.

Plaintiffs also argue that the agreements are substantively unconscionable because they will not receive a fair hearing before arbitrators who view them as enemies of the church.  However, deciding whether Scientology doctrine about suppressive persons renders the agreements substantively unconscionable requires

---

[6] The enrollment agreements appear to be mutual agreements to arbitrate all disputes. Although the departure agreements contain some remedies for the Church to litigate in the court system rather than arbitration, those appear to be limited to promises contained exclusively within the departure agreements, including issues involving the disclosure of confidential information.

"an analysis and interpretation of Scientology doctrine, which the First Amendment forbids civil courts to undertake." *Garcia*, 2021 WL 5074465, at *2 (11th Cir. 2021). Based on controlling caselaw, the First Amendment prevents the Court from resolving this underlying controversy about internal church doctrines. *Id.* at *9.

For the reasons stated, Plaintiffs' unconscionability arguments do not provide a basis to invalidate the arbitration agreements at issue here.

### Prospective Waiver

A prospective waiver of substantive federal rights is void. *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 637 n.19 (1985); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273-74 (2009). However, the United States Supreme Court has determined that an agreement to arbitrate statutory claims does not necessarily constitute a prospective waiver of substantive rights. *See, e.g.*, *id.* at 265-66. And even if federal anti-trafficking rights may not be prospectively waived, Plaintiffs appear to be confusing "an agreement to arbitrate those statutory claims with a prospective waiver of the substantive right." *Id.* at 265. Plaintiffs have pointed to no case law requiring nullification of the entire agreement, including the agreement to arbitrate, due to a commitment to arbitrate under religious law.

Plaintiffs argue they are unable to vindicate their rights because the arbitration agreements do not allow for the selection of an impartial decision-maker. While that argument is certainly consistent with a practical, common-sense view of the situation, it is not supported by sufficient evidence. Plaintiffs have failed to put forth any evidence showing that Scientology doctrine would compel an arbitrator to be hostile to their claims or would make it impossible for them to receive a fair and neutral

arbitration.  Moreover, even if they put forth such evidence it is likely that the First Amendment would preclude the court from resolving an underlying controversy about church doctrine.  *See Garcia*, 2021 WL 5074465, at *4.

Finally, Plaintiffs argue they cannot vindicate their rights because they are not allowed counsel of their choice.  While that argument also is consistent with a practical, common-sense view of the situation, and an elementary understanding of simple fairness and justice, there does not appear to be any constitutional or statutory requirement that parties be permitted counsel at arbitration proceedings.[7]  The cases cited by Plaintiffs in support of their argument are distinguishable on their facts.

For the reasons stated, Plaintiffs' prospective waiver of rights argument does not provide a basis to invalidate the arbitration agreements at issue here.

***First Amendment***

"Arbitration in a religious forum has long been recognized as a valid approach to dispute resolution."  *Garcia*, 2015 WL 10844160, at *4.  Although Plaintiffs argue that their First Amendment rights would be violated if they are required to arbitrate their disputes, as former Church members there is no question they agreed to abide by the rules and procedures of the chosen arbitration forum.

Plaintiffs' main authority supporting their First Amendment argument is an unpublished California opinion, *Bixler v. Superior Ct. for the State of California, Cnty.*

---

[7] The Court notes that in the *Garcia* case, the Garcias' lawyer did not attend the arbitration after being informed that Scientology procedures did not allow secular lawyers to play a substantive role in the proceedings.  *Garcia,* 2021 WL 5074465, at *3.  However, as noted in *Garcia*, should the arbitrators exhibit evident partiality, Plaintiffs may later move to vacate any arbitration award.  *See id.* at *9; *11-12. But the Court notes that Plaintiffs "agreed to a method of arbitration with inherent partiality and cannot . . . seek to vacate that award based on that very partiality."  *Id*. at *12.

*of Los Angeles*, No. B310559, 2022 WL 167792, at *1 (Cal. Ct. App. Jan. 19,

2022), *review denied* (Apr. 20, 2022), *cert. denied sub nom. Church of Scientology Int'l*

*v. Bixler*, 214 L. Ed. 2d 124, 143 S. Ct. 280 (2022).  It should be noted that this opinion

could not be cited in California because the opinion itself states that "California Rules

of Court, rule 8.1115, restricts citation of unpublished opinions in California courts."

In any event, *Bixler* is distinguishable because those claims involved "alleged tortious

conduct occurring after [the petitioners'] separation from the Church and do not

implicate resolution of ecclesiastical issues."  *Id*. at *1.  The conduct alleged here

occurred while Plaintiffs were members of the Church – their claims do not implicate

conduct after separation.

For the reasons stated, Plaintiffs' First Amendment argument does not provide

a basis to invalidate the arbitration agreements at issue here.

### Duress and Fraud

Plaintiffs argue that the agreements are void because they were signed under

"severe duress," which included "imprisonment and threats of economic, reputation,

and physical harm."  If supported factually, this appears to be a strong argument –

especially in light of California statutory and caselaw on this point, which seems to be

considerably more liberal than other jurisdictions with respect to claims of duress,

including claims of economic duress. *See* Cal. Civ. Code §§ 1569 and 1570; *Tarpy v.*

*Cnty. of San Diego*, 1 Cal. Rptr. 3d 607, 614 (Cal. Ct. App. 2003); *Leader Global Sols.,*

*LLC v. Tradeco Infraestructura, S.A. de C.V.*, 155 F. Supp. 3d 1310, 1317-18 (S.D. Fla.

2016).  The Court directed supplemental briefing on the issue of duress, specifically

whether the issue of duress should be resolved by the federal courts or must be submitted to arbitration and decided by the arbitrator.

The parties' supplemental briefing has demonstrated that the law on this issue is not a model of clarity. Having carefully considered the arguments and case law, the Court finds that controlling law on this point from the United States Supreme Court requires the issue of duress to be determined in the first instance by an arbitrator. *See, e.g., Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).

Plaintiffs challenge the enrollment and departure agreements as a whole as entered into under duress – there are no factual allegations specific to the arbitration provisions themselves. The *Prima Paint* doctrine has been extended to require arbitration panels to determine many issues involving the validity of a contract with arbitration language, including allegations that such contract is voidable because it involves fraud, duress, or unconscionability. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 637 F.2d 391, 398 (5th Cir. 1981). These claims must therefore be decided by an arbitrator, not the district court.[8]

## Conclusion

Plaintiffs allege they suffered considerable mental, physical, and emotional abuse as a result of their participation in Scientology, which began during their

---

[8] Plaintiffs also argue that the agreements are void due to fraud because they were not fully informed about the documents at the time of signing, including that the documents contained arbitration provisions. It is not clear whether the factual allegations, if true, would actually constitute fraud. Regardless, there is no doubt this claim is governed by the same analysis as the duress claim. *See, e.g.*, *Prima Paint Corp.*, 388 U.S. at 404-05; *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak St.*, 35 Cal. 3d 312, 324 (Cal. 1983). The leading case on this issue, *Prima Paint,* involved a fraud claim.

childhood and included long stays aboard a large private cruise ship operating in the Caribbean. An uninterested observer reading the amended complaint would likely be surprised and shocked by the conduct alleged. But under existing law, Plaintiffs are limited to seeking relief through arbitration within the Scientology organization itself, not through the courts. This is what the law appears to require even where, as here, Plaintiffs allege they were forced to sign the agreements – enforceable for a billion years – under duress. An uninterested observer might also find such a limitation on access to the courts to be surprising and shocking, but such a limitation appears to be required under governing law. On the other hand, it should not be forgotten that Plaintiffs each signed numerous agreements to arbitrate disputes with Scientology over an extended period of years. The most recent agreements were signed in 2009, when Ms. Paris was roughly 31 years of age, and in 2015, when the Baxters were roughly 33 and 31 years of age respectively.

For the reasons discussed above, the arbitration agreements in this case are enforceable. Under existing law, this Court's hands are tied – the Court is not permitted to determine whether the agreements were executed under duress and therefore void. Instead, those issues must be decided through arbitration.

However, Defendants are not entitled to dismissal of the action. In accordance with Eleventh Circuit precedent, this case must be stayed rather than dismissed. *See, e.g., Milestone v. Citrus Specialty Grp., Inc.*, No. 8:19-cv-2341-T-02JSS, 2019 WL 5887179, at *3 (M.D. Fla. Nov. 12, 2019) (citing *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992); 9 U.S.C. § 3; *Giraud v. Woof Gang Bakery*, No. 8:17-cv-2442-T-26AEP, 2018 WL 2057814 (M.D. Fla. May 3, 2018)).

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) The motions to compel arbitration (Docs. 84; 85; 87; 88; 89) are **GRANTED** to the extent the Court finds that Defendants may enforce the arbitration agreements in this case.

(2) The motions are **DENIED** to the extent that Plaintiffs' claims are not subject to dismissal at this time.

(3) This case is **STAYED** pending the completion of arbitration, and the parties are directed to notify the Court within (14) days of the resolution of the arbitration proceedings.

(4) The Clerk is directed to terminate all pending motions and deadlines, and thereafter close this case.

**DONE and ORDERED** in Chambers, in Tampa, Florida, this <u>31st</u> day of March, 2023.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**