**No. 23-90013-B**

United States Court of Appeals
for the Eleventh Circuit

**GAWAIN BAXTER, LAURA BAXTER, AND VALESKA PARIS,**

*Plaintiffs-Petitioners*,

v.

**DAVID MISCAVIGE; CHURCH OF SCIENTOLOGY INTERNATIONAL, INC.; IAS ADMINISTRATIONS, INC.; RELIGIOUS TECHNOLOGY CENTER, INC.; CHURCH OF SCIENTOLOGY FLAG SERVICE ORGANIZATION, INC.,** and **CHURCH OF SCIENTOLOGY FLAG SHIP SERVICE ORGANIZATION, INC.,**

*Defendants-Respondents*.

————————————————

Petition for Review from the U.S. District Court for the Middle District
of Florida, Tampa Division
Case No. 8:22-cv-986-TPB-JSS (Hon. Tom Barber)

————————————————

**RESPONDENTS' ANSWER BRIEF TO PETITION FOR
PERMISSION FOR INTERLOCUTORY APPEAL**

Gustavo J. Membiela
Winston & Strawn LLP
200 South Biscayne Blvd.,
Suite 2400
Miami, FL 33131
(305) 910-0717
gmembiela@winston.com

*Counsel for Defendant-
Respondent Church of
Scientology, International*

Christopher G. Oprison
DLA Piper, LLP
200 South Biscayne Blvd.,
Suite 2500
Miami, FL 33131
(305) 423-8500
Chris.oprison@dlapiper.com

*Counsel for Defendant-
Respondent Religious
Technology Center*

Charles M. Harris
Brigid A. Merenda
Trenam Law
200 Central Avenue, Suite 1600
St. Petersburg, FL 33701
(727) 896-7171
charris@trenam.com
bamerenda@trenam.com

*Counsel for Defendant-Respondent Flag Service Organization*

David B. Weinstein
Brian C. Porter
Greenberg Traurig, P.A.
101 E. Kennedy Blvd.,
Suite 1900
Tampa, FL 33602
(813) 318-5700
weinsteind@gtlaw.com
brian.porter@gtlaw.com

Robert V. Potter, Jr.
Johnson Pope Bokor Ruppel &
Burns
311 Park Place Blvd., #300
Clearwater, FL 33759
(727) 461-1818
BobP@jpfirm.com

*Counsel for Defendant-Respondent IAS Administrations*

Brigid Cech Samole
Greenberg Traurig, P.A.
333 SE 2nd Avenue, Suite 4400
Miami, FL 33131
(305) 579-0500
Brigid.cechsamole@gtlaw.com

*Counsel for Defendant-Respondent Flag Ship Service Organization*

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Respondents Church of Scientology International, Religious Technology Center, IAS Administrations, Inc., Church of Scientology Flag Service Organization, Inc., and Church of Scientology Flag Ship Service Organization, Inc. believe this case, which involves a straightforward application of the law, can and should be resolved without oral argument. If the Court does set this case for oral argument, however, Defendant-Respondents would like to participate.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

STATEMENT OF THE CASE ..............................................................................3

ARGUMENT .........................................................................................................8

I.   Question One Regarding Who Decides Duress and Fraud Defenses Should Not Be Certified. ...................................................................9

     A.   This Is Not a "Controlling Question of Law." .....................................9

     B.   There Is No Substantial Ground for Difference of Opinion. .............13

          1.   Petitioners' Duress and Fraud Challenges Are Validity Challenges, Not Formation Challenges, and Therefore Must Be Heard by the Arbitrators................................................13

          2.   Petitioners Fail to Raise Adequate Challenges to the Arbitration Provisions. ...............................................................18

     C.   Resolution Would Not Materially Advance or Terminate the Litigation. ...........................................................................................21

II.   The First Amendment Question Should Not Be Certified. ..........................22

     A.   This Is Not a "Controlling Question of Law." ...................................22

     B.   There Is No Substantial Ground for Difference of Opinion. .............23

          1.   *Bixler* Does Not Create a "Split" of Authority. ........................23

          2.   The First Amendment Question Raises No Important or Difficult Issues. ........................................................................24

     C.   Deciding the Question Will Not Materially Advance or Terminate the Litigation................................................................25

CONCLUSION ...................................................................................................26

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adler v. Dell, Inc.*,
  No. 08-13170, 2009 WL 646885 (E.D. Mich. Mar. 10, 2009)..........................25

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)................................................................................................17

*\*Attix v. Carrington Mortg. Servs., LLC*,
  35 F.4th 1284 (11th Cir. 2022) ....................................................................19, 20

*Benoay v. Prudential Bache Secs., Inc.*,
  805 F.2d 1437 (11th Cir. 1986) ..........................................................................14

*Bixler v. Superior Ct.*,
  No. B310559, 2022 WL 167792 (Cal.Ct.App. Jan. 19, 2022) ..................*passim*

*Britt v. IEC Corp.*,
  No. 20-cv-60814, 2022 WL 3370216 (S.D. Fla. Aug. 16, 2022)........................8

*Bruni v. Didion*,
  160 Cal.App.4th 1272 (2008) ..............................................................................18

*\*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006)......................................................................................*passim*

*Cal. Standard Fin. Corp. v. Cornelius Cole Ltd.*,
  9 Cal.App.2d 573 (1935) ......................................................................................15

*Cancanon v. Smith Barney, Harris, Upham & Co.*,
  805 F.2d 998 (11th Cir. 1986) ............................................................................17

*Chastain v. Robinson–Humphrey Co., Inc.*,
  957 F.2d 851 (11th Cir. 1992) ............................................................................14

*\*Cheruvoth v. SeaDream Yacht Club Inc.*,
  No. 20-14450, 2021 WL 4595177 (11th Cir. Oct. 6, 2021) ..............................15

*\*Coleman v. Prudential Bache Secs., Inc.*,
  802 F.2d 1350 (11th Cir. 1986) ...................................................................14, 18

*D.A.M. Prods., Inc. v. Acosta Restituyo*,
    No. 17-22962, 2018 WL 11372107 (S.D. Fla. Aug. 8, 2018)
    ..................................................................................8, 13, 23, 25

*Danforth v. Minnesota*,
    552 U.S. 264 (2008).............................................................23

*Davis v. Prudential Secs., Inc.*,
    59 F.3d 1186 (11th Cir. 1995) ...........................................25

*Encore Prods., Inc. v. Promise Keepers*,
    53 F.Supp.2d 1101 (D. Colo. 1999)....................................25

*Garcia v. Church of Scientology*,
    No. 18-13452, 2021 WL 5074465 (11th Cir. Nov. 2, 2021).....................1, 2, 24

*Granite Rock Co. v. International Bhd. Of Teamsters*,
    561 U.S. 287 (2010)........................................................16, 17

*Headley v. Church of Scientology Int'l*,
    687 F.3d 1173 (9th Cir. 2012) ..........................................3, 6

*Hosanna-Tabor Evangelical Lutheran Church and School v.*
    *E.E.O.C.*,
    565 U.S. 171 (2012)............................................................24

*Houston v. NPC Int'l, Inc.*,
    No. 13-01160, 2014 WL 12535302 (W.D. Mo. May 23, 2014) ......................26

*Jones v. Waffle House, Inc.*,
    866 F.3d 1257 (11th Cir. 2017) .........................................20

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
    581 U.S. 246 (2017)............................................................17

*Landcastle Acquisition Corp. v. Renasant Bank*,
    57 F.4th 1203 (11th Cir. 2023) .........................................15

*Larsen v. Citibank FSB*,
    871 F.3d 1295 (11th Cir. 2017) .........................................16

iii

*Martinez-Gonzalez v. Elkhorn Packing Co., LLC*,
    No. 18-CV-05226-EMC, 2019 WL 13119015 (N.D. Cal. Mar. 11,
    2019) ................................................................................................. 18

*Matthews v. Woodmen of World Life Ins. Soc.*,
    No. 208-132, 2009 WL 10702559 (S.D. Ga. Feb. 13, 2009) ........................... 26

*\*McFarlin v. Conseco Servs., LLC*,
    381 F.3d 1251 (11th Cir. 2004) ....................................................... 9, 13, 21, 22

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*,
    637 F.2d 391 (5th Cir. 1981) ................................................................... 14

*Morgan Stanley Cap. Grp. Inc. v. Public Util. Dist. No. 1 of
    Snohomish Cnty., Wash.*,
    554 U.S. 527 (2008) ................................................................................ 17

*Najarro v. Superior Court*,
    70 Cal.App.5th 871 (2021) ..................................................................... 12

*National Collegiate Athletic Ass'n v. Tarkanian*,
    488 U.S. 179 (1988) ................................................................................ 24

*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*,
    22 Cal.App.5th 1096 (2018) ................................................................... 21

*Nielsen v. Grain Millers, Inc.*,
    No. 16-CV-3103, 2017 WL 11569190 (D. Minn. May 2, 2017) ................... 17

*Nitro-Lift Technologies, L.L.C. v. Howard*,
    568 U.S. 17 (2012) ................................................................................... 9

*Parm v. National Bank of Calif., N.A.*,
    835 F.3d 1331 (11th Cir. 2016) ............................................................... 20

*Plante v. USF&G Specialty Ins. Co.*,
    No. 03-23157-CIV, 2004 WL 1429932 (S.D. Fla. June 2, 2004) ................... 8

*Prado-Steiman ex rel. Prado v. Bush*,
    221 F.3d 1266 (11th Cir. 2000) ............................................................... 25

*Preston v. Ferrer*,
    552 U.S. 346 (2008) ................................................................................. 1

iv

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,
   388 U.S. 395 (1967)....................................................................*passim*

Rintin Corp., S.A. v. Domar, Ltd.,
   476 F.3d 1254 (11th Cir. 2007) ..........................................................15

*Roberts v. AT&T Mobility LLC,
   877 F.3d 833 (9th Cir. 2017) ..............................................................25

Ryan, Beck & Co., LLC v. Fakih,
   275 F.Supp.2d 393 (E.D.N.Y. 2003) ..................................................22

Salim Oleochemicals v. M/V Shropshire,
   278 F.3d 90 (2d Cir. 2002) ...................................................................8

Simula, Inc. v. Autoliv, Inc.,
   175 F.3d 716 (9th Cir. 1999) ..............................................................18

*Solymar Invs., Ltd. v. Banco Santander S.A.,
   672 F.3d 981 (11th Cir. 2012) ...............................................11, 15, 16

Synnex Corp. v. Wattles,
   No. 11-CV-01496-YGR, 2012 WL 5524953
   (N.D. Cal. Nov. 14, 2012)...................................................................18

Tuckman v. JPMorgan Chase Bank, N.A.,
   No. 20-11242, 2021 WL 3357953 (11th Cir. Aug. 3, 2021)...............20

U.S. v. One Parcel of Real Prop. with Bldgs., Appurtenances &
   Improvements,
   767 F.2d 1495 (11th Cir. 1985) ...........................................................8

*Wiand v. Schneiderman,
   778 F.3d 917 (11th Cir. 2015) ...........................................................11

Wild, Carter & Tipton v. Yeager,
   No. F070631, 2017 WL 4564230 (Cal.Ct.App. Oct. 13, 2017) .........18

**Statutes**

9 U.S.C. § 16.......................................................................................8

28 U.S.C. § 1292(b) ....................................................................*passim*

Federal Arbitration Act ................................................................1, 9, 16, 18

**Other Authorities**

Cal. R. Ct. 8.1115 .................................................................................23

U.S. Const. amend. I ....................................................................*passim*

## INTRODUCTION

In *Garcia v. Church of Scientology*, No. 18-13452, 2021 WL 5074465 (11th Cir. Nov. 2, 2021), this Court enforced the "exact arbitration agreements at issue here." (Petitioners' Appendix B ("Arbitration Order") 6.) Nevertheless, since the complaint was filed over a year ago, this is the *sixth* round of briefing to enforce those agreements. The three Petitioners, and their *fourteen* attorneys of record, have sued five Church entities and the Church leader. Petitioners have done everything possible to escalate costs and undermine the Federal Arbitration Act ("FAA"), which seeks "streamlined proceedings and expeditious results." *Preston v. Ferrer*, 552 U.S. 346, 357–58 (2008).

The Petition is "exhibit A" in this story of delay. Petitioners consume several pages spinning false and irrelevant allegations, most unsupported by citation. They misquote the Arbitration Order and present its summary of allegations as findings of fact. In reality, Petitioners executed multiple agreements over more than a decade because they understood those agreements were a condition to serve in the Church's religious order and remain in good standing in the Scientology religion.

1

The rest of the Petition shows why Petitioners try to sway the Court with inflammatory rhetoric: No law supports their position. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) and *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) command Petitioners' duress and fraud challenges to their agreements with Respondents ("Agreements") be decided by the arbitrators, and this Court and no other court has ruled otherwise. No binding authority holds the First Amendment prevents enforcement of a private agreement for religious arbitration. Petitioners rely exclusively on *Bixler v. Superior Ct.*, No. B310559, 2022 WL 167792 (Cal.Ct.App. Jan. 19, 2022), which the District Court recognized is *not even authority in California* and is factually distinguishable.

Perhaps the Petitioners' most galling argument is the unfounded assertion that their process is *more efficient* than arbitration. Petitioners assert (without support) that arbitration of their claims could take two years. Scientology arbitration is expeditious,[1] free, and convenient, as arbitrators can travel anywhere. Addressing Petitioners' fraud and

---

[1] In *Garcia*, the arbitrators rendered their judgment within three months of their appointment.

2

duress claims now does not resolve whether this case goes to arbitration. Addressing the First Amendment issue now will not terminate the case. And had Petitioners honored their Agreements, the arbitration could have concluded by now.

Petitioners cannot meet the high bar for interlocutory review of an order granting arbitration, so they resort to inflammatory statements. This Court should apply settled law and "*expeditiously*" enforce the Agreements.

## STATEMENT OF THE CASE

For over a decade of their adult lives, Petitioners served in the Sea Org – "the religious order of Scientology . . . composed of the most dedicated Scientologists." (Arbitration Order 3, n.2.) The Sea Org is an "elite religious order" that "demands much of its members, renders strict discipline, imposes stringent ethical and lifestyle constraints, and goes to great efforts to retain clergy and to preserve the integrity of the ministry." *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1174 (9th Cir. 2012) (holding that plaintiffs could not assert TVPRA claims based on the conditions of service in the Sea Org).

Petitioners executed Enrollment Agreements as a condition to participate in the Sea Org and religious services. They "agreed to resolve disputes with the Church through binding religious arbitration." (Arbitration Order 3.) While the Enrollment Agreements contain arbitration provisions, they are broader contracts governing the conditions of Petitioners' religious service within the Sea Org and their relationship with Scientology. (Respondents' Supplemental Appendix ("S.A.") 199-212, 247-253.) Petitioners served on the *Freewinds* ship, a religious retreat where Sea Org members minister services to Scientology parishioners and render humanitarian aid. (S.A.190, ¶6.) Petitioners left and returned to the *Freewinds* over 3,000 times during their service.[2]

Ultimately, Petitioners decided to leave the Sea Org. A departing Sea Org member follows prescribed "routing out" procedures, including signing Departure Agreements, to remain a Scientologist in good standing. (S.A.181, ¶22.) Petitioners signed Departure Agreements in 2007, 2009, and 2012. (Arbitration Order 4; S.A.227-246; S.A.254-276.)

---

[2] Petitioners falsely assert that the *Freewinds* improperly retained their passports while on board. Maritime law mandates: "**The Master [of the passenger ship] is responsible for the safekeeping of all nonimmigrant travel documents**." (S.A.197, ¶22; S.A.281 (emphasis in original).)

4

The Departure Agreements contain an arbitration provision that is just one part of an entire contract covering issues such as confidentiality, non-disparagement, compensation, and release of claims. (*Id.*) In December 2015, after leaving the Sea Org, two Petitioners executed additional agreements containing religious arbitration provisions. (S.A.288-289, ¶3; S.A.290-299; Arbitration Order 4.)

In April 2022, Petitioners filed their complaint alleging violations of the TVPRA arising from conditions of their service in the religious order. Respondents moved to compel arbitration, or, alternatively, to dismiss for lack of personal jurisdiction and failure to state a claim.

Petitioners asserted the Agreements could not be enforced due to fraud and duress. These allegations concern the validity of the entire Agreements and do not mention duress or fraud exercised specifically in connection with any arbitration provision. (Arbitration Order 14; S.A.305-308; S.A.327, ¶12; S.A.331-332, ¶¶27-28, ¶30, ¶¶32-33; S.A.340, ¶14; S.A.343, ¶¶27-28; S.A.352, ¶24; S.A.354, ¶31; S.A.356, ¶¶40-42.)

Petitioners' allegations and declarations also belied their claims of duress and fraud. Petitioners admit they read their Departure Agreements and understood they related to their separation from the Sea

5

Org. (S.A.331-332, ¶27, ¶31; S.A.342-343, ¶24, ¶27; S.A.354, ¶31; S.A.356, ¶¶40-42.) Petitioners generically state they were "required" to sign Agreements and "understood" certain consequences would result, but the FAC also alleges that Petitioners executed documents *to remain* in the Sea Org or the religion. Their obedience originated from religiously-based "guilt[] and shame," (S.A.64, ¶55), fear of being declared a "Suppressive Person" (*i.e.*, excommunicated) (S.A.88, ¶104; S.A.104, ¶138; S.A.122, ¶177), or fear of reduced status within the Sea Org. (S.A.54, ¶36; S.A.56, ¶38, S.A.60-61, ¶¶47-48; S.A.64-65, ¶¶54-55; S.A.68-69, ¶64; S.A.73, ¶73; S.A.88-89, ¶103, ¶105, ¶106; S.A.102-103, ¶¶133-135.) Such religiously-based conduct cannot constitute duress or force under law. *Headley*, 687 F. 3d at 1180–81[3] (holding fear of being declared a "suppressive person" is not "serious harm" or "threat").

The District Court granted Respondents' motions to arbitrate. It found "there is no question [Petitioners] agreed to abide by the rules and procedures of the chosen arbitration forum." (Arbitration Order 12.) As

---

[3] "A church is entitled to stop associating with someone who abandons it. . . . A church may also warn that it will stop associating with members who do not act in accordance with church doctrine. The former is a legitimate consequence, the latter a legitimate warning. . . . Neither supports a forced-labor claim." *Id.*, 1180.

to duress and fraud, the District Court found, "Plaintiffs challenge the enrollment and departure agreements as a whole as entered into under duress – there are no factual allegations specific to the arbitration provisions themselves." (*Id.*, 14 & n.8.) *Prima Paint* requires that such challenges be heard by the arbitrators. (*Id.*) Petitioners also argued enforcement of their Agreements violates their First Amendment rights. The District Court found Petitioners' sole "authority," the unpublished *Bixler* decision, was nonprecedential and did not apply. (*Id.*, 13.)

Notwithstanding the clear holding of the Arbitration Order, the District Court granted the Motion to Certify the duress, fraud, and First Amendment issues (Petitioners' Appendix A ("Certification Order").) While the District Court stated there was "room for disagreement," it cited no authority contradicting the Arbitration Order or supporting Petitioners' position, noting Respondents "have the stronger position." (*Id.*, 5.)

## ARGUMENT

Interlocutory appeal of an order compelling arbitration is governed by 28 U.S.C. § 1292(b). 9 U.S.C. § 16. A litigant must show: (1) a controlling question of law (2) over which there is a substantial ground for difference of opinion; and (3) that immediate resolution would materially advance the ultimate termination of the litigation. *All* three elements *must* be shown. *Britt v. IEC Corp.*, No. 20-cv-60814, 2022 WL 3370216, at *16 (S.D. Fla. Aug. 16, 2022).

There is a "strong presumption against interlocutory appeals." *U.S. v. One Parcel of Real Prop. with Bldgs., Appurtenances & Improvements*, 767 F.2d 1495, 1498 (11th Cir. 1985). Given the FAA's purpose that arbitration agreements be expeditiously enforced, courts should be especially reluctant to certify orders compelling arbitration. *Salim Oleochemicals v. M/V Shropshire*, 278 F.3d 90, 93 (2d Cir. 2002) *abrogated on other grounds*; *D.A.M. Prods., Inc. v. Acosta Restituyo*, No. 17-22962, 2018 WL 11372107 (S.D. Fla. Aug. 8, 2018). Permission to appeal such an order is a "rare exception" and should not be granted here. *Plante v. USF&G Specialty Ins. Co.*, No. 03-23157-CIV, 2004 WL 1429932, at *3 (S.D. Fla. June 2, 2004). Even if Petitioners establish the

certification elements, courts have "discretion to turn down a § 1292(b) appeal." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004).

## I.    Question One Regarding Who Decides Duress and Fraud Defenses Should Not Be Certified.

### A.    This Is Not a "Controlling Question of Law."

A "controlling question of law" concerns "the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *McFarlin*, 381 F.3d at 1258.[4] It should be an "abstract legal issue" of "'pure' law" that the Circuit can answer "quickly and cleanly" without having to "delve beyond the surface of the record in order to determine the facts." *Id.*, 1258–59. "The antithesis of a proper § 1292(b) appeal is one that turns on . . . whether the district court properly applied settled law to the facts or evidence of a particular case." *Id.*, 1259.

---

[4] Petitioners incorrectly state California law applies to the "application and interpretation of the arbitration" provisions. (Petition 14.) While the Departure Agreements are governed by California law, the enforcement of the arbitration provisions within those agreements is governed by the FAA and federal FAA caselaw. (S.A.156-159); *see also Nitro-Lift Technologies, L.L.C. v. Howard*, 568 U.S. 17, 22 (2012) (rejecting state law limitation on application of *Prima Paint/Buckeye* doctrine).

The duress and fraud questions do not present "pure" questions of law; they involve applications of law to the facts. As to duress, Petitioners argue *Prima Paint* and *Buckeye*, while indisputably "settled law," do not apply to the facts here. Petitioners asserted they "directed their duress challenge to the arbitration provisions specifically," (S.A.360, S.A.363-364), but the District Court disagreed and applied *Prima Paint* (Arbitration Order 14). Review of the duress argument – as framed by Petitioners – would require this Court to review the record to determine whether Petitioners' duress allegations are specific to the arbitration clauses, as they assert, or are directed to the Agreements as a whole, as the District Court concluded.

Petitioners' "fraud" affirmative defense also requires review of the record. Petitioners characterize it as a "fraud-in-the-execution" claim and then cite outdated authority that courts (and not arbitrators) decide fraud-in-the-execution claims, even when they are directed towards the entire contract. (Petition 16-17.) Petitioners ascribe a "fraud-in-the-execution" label instead of "fraud-in-the-inducement" to circumvent *Prima Paint*, which held that a fraud-in-the-inducement challenge to a contract containing an arbitration clause should be decided by the

arbitrators. 388 U.S. at 403–04. But Petitioners' characterization does not control and requires court review of the factual allegations. *Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 994 (11th Cir. 2012) (rejecting party's assertion that it raised a fraud-in-the-execution challenge when the facts supported a fraud-in-the-inducement challenge).

No matter how Petitioners label their challenges, *Buckeye* supplies the test. *Buckeye* identified discrete instances of fraud or lack of capacity germane to whether an agreement was concluded:

> The issue of the contract's ***validity*** is different from the issue whether any agreement between the alleged obligor and obligee was ever ***concluded***. Our opinion today addresses only the former, and does not speak to the issue decided in the cases cited by respondents . . . , which hold that it is for courts to decide whether the alleged obligor ever signed the contract, . . . , whether the signor lacked authority to commit the alleged principal, . . . , and whether the signor lacked the mental capacity to assent . . . .

*Buckeye,* 546 U.S. at 444 n.1 (emphasis added) ("*Buckeye* Note 1 Exceptions"); *see also Wiand v. Schneiderman*, 778 F.3d 917, 924 (11th Cir. 2015) ("A party may challenge the existence of a contract by alleging that at least one party never agreed to its terms, that a signatory lacked

the authority to commit his principal, or that the signor lacked the mental capacity to assent . . .") (citing *Buckeye*).

By labeling their defense as "fraud-in-the-execution," Petitioners attempt to fit under one of the narrow *Buckeye* Note 1 Exceptions. The District Court found Petitioners "argue that the agreements are void due to fraud because they were not fully informed about the documents at the time of signing" – *i.e.*, *at most*, fraud-in-the-inducement. (Arbitration Order 14, n.8.)[5] The District Court noted, "[i]t is not clear whether the factual allegations, if true, would actually constitute fraud." (*Id*.) Petitioners' allegations fail to show the Agreements were the product of fraud-in-the-execution and not *concluded*, and thus meet none of the narrow *Buckeye* Note 1 Exceptions. Regardless, determining whether Petitioners' allegations meet the *Buckeye* Note 1 Exceptions presents a mixed question of law and fact.

---

[5] Petitioners do not claim that their names were forged or that pages were swapped out after signing. They understood that the Departure Agreements concerned their departure from the Sea Org and that executing them was a condition of leaving in good standing. (*Supra*, 5.) Petitioners cite *Najarro v. Superior Court*, 70 Cal.App.5th 871, 889-90 (2021) for the proposition that these allegations amounted to fraud-in-the-execution. (Petition 16.) *Najarro*, like the District Court, held such claims amount to fraud-in-the-inducement "at most" and not fraud-in-the-execution. 70 Cal.App.5th at 889–90.

**B.    There Is No Substantial Ground for Difference of Opinion.**

In determining whether to grant review, courts must consider whether there is "substantial dispute about the correctness of any of the pure law premises the district court actually applied in its reasoning leading to the order sought to be appealed." *McFarlin*, 381 F.3d at 1259. *Disagreement among courts outside the controlling circuit does not constitute "substantial ground for difference of opinion." D.A.M.*, 2018 WL 11372107, at *4 (emphasis added).

**1.    Petitioners' Duress and Fraud Challenges Are Validity Challenges, Not Formation Challenges, and Therefore Must Be Heard by the Arbitrators.**

The Arbitration Order correctly held "[t]he *Prima Paint* doctrine has been extended to require arbitration panels to determine many issues involving the validity of a contract with arbitration language, *including allegations that such contract is voidable because it involves fraud, duress, or unconscionability*." (Arbitration Order 14 (emphasis

13

added).)[6] The Certification Order cites no authority challenging this holding.

The established authority in this Court and elsewhere is to the contrary: Duress and fraud challenges to a contract go to the validity of a contract and are for the arbitrator to decide. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 637 F.2d 391, 398 (5th Cir. 1981) (cited by Arbitration Order 14); *Coleman v. Prudential Bache Secs., Inc.*, 802 F.2d 1350 (11th Cir. 1986) ("coercion, or confusion in signing the agreement generally should be determined by an arbitrator"); *Benoay v. Prudential Bache Secs., Inc.,* 805 F.2d 1437, 1441 (11th Cir. 1986) (reserving for arbitrator consideration of certain claims, such as duress, regarding validity of underlying contract and not validity of arbitration clause); *Chastain v. Robinson–Humphrey Co., Inc.,* 957 F.2d 851, 855 (11th Cir. 1992) (duress and other defenses "regarding the validity of a contract containing arbitration language" reserved for arbitrator);

---

[6] The Petition erroneously asserts the Arbitration Order "noted that Petitioners had offered a 'strong argument' on who should decide the duress and fraud-in-the-execution issues." (Petition 13.) The Arbitration Order stated the *allegations* of duress "*if supported factually . . .* appears to be a strong argument" to support a duress affirmative defense. (Arbitration Order 13 (emphasis added).) The District Court never stated Petitioners had a "strong argument" on who adjudicates those defenses.

*Solymar*, 672 F.3d at 995–96 (reserving for arbitrator fraud-in-the-inducement challenge as it went to validity of underlying contract); *Cheruvoth v. SeaDream Yacht Club Inc.*, No. 20-14450, 2021 WL 4595177, at *3 (11th Cir. Oct. 6, 2021) (challenges to "certain claims regarding validity of underlying contract" go to arbitrator).

*Buckeye*, if anything, *expanded* the types of challenges reserved for arbitrators. Before *Buckeye*, some courts distinguished between challenges to a contract as void, and challenges to a contract as voidable, with only voidable challenges reserved for arbitrators.[7] *Buckeye* erased this distinction, holding arbitrators should hear *both* void and voidable challenges. 546 U.S. at 447–448. *See also Rintin Corp., S.A. v. Domar, Ltd.*, 476 F.3d 1254, 1259 (11th Cir. 2007). Consistent with that holding, neither this Court nor any court since *Buckeye* has broadened the narrow *Buckeye* Note 1 Exceptions to include the types of challenges asserted by Petitioners.

---

[7] Duress and fraud-in-the-inducement are "voidable" challenges. *Landcastle Acquisition Corp. v. Renasant Bank*, 57 F.4th 1203, 1223–24 (11th Cir. 2023) ("Examples of voidable contracts include situations where an invalidating cause, like duress, fraud, . . . render a facially valid contract 'voidable.'"); *Cal. Standard Fin. Corp. v. Cornelius Cole Ltd.,* 9 Cal.App.2d 573, 578 (1935) ("contract obtained by menace or duress is voidable, and not void.").

Petitioners try to manufacture a "substantial ground for difference of opinion" by claiming their challenges do not go to the validity of the Agreements but concern "formation issues," and thus are not subject to *Prima Paint* and *Buckeye*. (Petition 13-14, 16.) Petitioners' expansive definition of a "formation issue" includes any "unfair dealing at the contract formation stage." (*Id.*, 14.) No Supreme Court or Eleventh Circuit authority interpreting the FAA uses that definition in distinguishing between validity and formation challenges. *See, e.g.*, *Solymar*, 672 F.3d at 993 ("courts should consider formation challenges only where there is a 'viable claim of lack of assent' *in the form of signatures to the underlying contract*") (emphasis added); *Larsen v. Citibank FSB*, 871 F.3d 1295, 1312 n.12 (11th Cir. 2017) (attack on "execution" of contract as procedurally unconscionable is "for the determination of the arbitrator"). And *Granite Rock Co. v. International Bhd. Of Teamsters*, 561 U.S. 287 (2010), which Petitioners contend wrought a sea-change on this question (Petition 15, n.1), did not expand the *Buckeye* Note 1 Exceptions or recharacterize classic "validity" challenges – such as duress or fraud – into "formation" challenges. *See Solymar*, 672 F.3d at 990, 992 ("*Granite Rock* did not overturn *Prima*

*Paint*. . . . the Supreme Court has long recognized a distinction between" challenges to the validity of a contract and challenges to its formation; "*Granite Rock* [did not] amend that distinction.").

*None* of Petitioners' authority supposedly characterizing their claims as "formation" challenges holds that Petitioners' challenges should be heard by a district court. (Petition 14-15.) Petitioners' reliance on *Cancanon v. Smith Barney, Harris, Upham* & Co., 805 F.2d 998, 999 (11th Cir. 1986), in which the plaintiffs alleged their signatures were furtively obtained or forged, does not support a "substantial ground for difference of opinion" on the issue. The fraud alleged there plainly falls into a *Buckeye* Note 1 Exception.

Petitioners' other authority fails. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246 (2017) cites to neither *Prima Paint*, *Buckeye*, nor *Granite Rock*, and does not address the issue of validity versus formation. *Morgan Stanley Cap. Grp. Inc. v. Public Util. Dist. No. 1 of Snohomish Cnty., Wash.*, 554 U.S. 527 (2008) concerns the Federal Energy Regulatory Commission's authority to modify contracts. Justice Thomas' concurrence in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) has nothing to do with the adjudication of duress challenges. *See Nielsen*

*v. Grain Millers, Inc.,* No. 16-CV-3103 (WMW/TNL), 2017 WL 11569190, at *5 (D. Minn. May 2, 2017).[8]

### 2.    Petitioners Fail to Raise Adequate Challenges to the Arbitration Provisions.

The District Court held that Petitioners' duress and fraud claims do not specifically challenge the arbitration clauses, but go to the validity of the Agreements as a whole. (Arbitration Order 14 ("[T]here are no factual allegations specific to the arbitration provisions themselves.").) This ruling is a crystal-clear application of Supreme Court and Eleventh Circuit law. *Coleman,* 802 F.2d at 1352 (sending question of fraud to arbitrator because plaintiff submitted "no evidence to support the claim

---

[8] Petitioners cite several out-of-Circuit district court cases, which are immaterial for determining whether there is a "difference of opinion," and state court cases, which cannot control a federal court's interpretation of the FAA. Furthermore, those cases do not support Petitioners' position. *Martinez-Gonzalez v. Elkhorn Packing Co., LLC*, No. 18-CV-05226-EMC, 2019 WL 13119015, at *4 (N.D. Cal. Mar. 11, 2019) involved a challenge to standalone arbitration agreements and discussed neither *Prima Paint* nor *Buckeye. Synnex Corp. v. Wattles*, No. 11-CV-01496-YGR, 2012 WL 5524953 (N.D. Cal. Nov. 14, 2012) and *Wild, Carter & Tipton v. Yeager*, No. F070631, 2017 WL 4564230 (Cal.Ct.App. Oct. 13, 2017) are not arbitration cases. *Bruni v. Didion*, 160 Cal.App.4th 1272, 1283–85 (2008) did not involve a duress or fraud challenge. *See also Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (challenges to the entire agreement, including economic duress and fraudulent inducement, "are questions for the arbitrator").

that the arbitration clause itself, standing apart from the whole agreement, was induced by fraud"); *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1304 (11th Cir. 2022) (challenge must show why the arbitration "provision itself, apart from the agreement as a whole, was invalid or unenforceable").

Petitioners respond to the District Court's correct application of law to their allegations by attacking a straw man. They assert, "[t]he District Court held, without citing any authority, that when the Supreme Court said in *Buckeye* that a challenge must be 'specific' to the arbitration provision to succeed, it meant that the challenge must apply *only* to the arbitration provision." (Petition 16-17.) However, the Petition quotes no such holding *because it appears nowhere in the Arbitration Order*.

Neither the District Court nor Respondents suggest that a challenge to the arbitration provision must use a different legal theory (*e.g.*, duress versus unconscionability) than a challenge to the contract as a whole. Petitioners neither submitted evidence of specific acts of duress or fraud used to obtain their consent to the arbitration provisions in particular, nor alleged such acts. If Petitioners are asserting the alleged acts that supposedly caused them to agree to the overall contracts suffice

19

as challenges to arbitration provisions within the contracts, they misapprehend unambiguous law. As this Court has held:

> [B]efore deciding a challenge to the validity or enforceability of a delegation agreement, we should ensure that the challenge asserted *really is* about the delegation agreement . . . . And to "directly" or "specifically" challenge the validity or enforceability of a delegation agreement, it is not sufficient for a party to merely say the words, "I am challenging the delegation agreement." Challenging a delegation agreement is a matter of substance, not form.

*Attix*, 35 F.4th at 1304 (emphasis in original); *see also Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1265 (11th Cir. 2017) (plaintiff failed to challenge delegation clause when plaintiff did not show why the delegation provision itself, apart from the entire contract, was invalid.) For this same reason, Petitioners' reliance on *Parm v. National Bank of Calif., N.A.*, 835 F.3d 1331 (11th Cir. 2016) (Petition 17) fails. In *Parm*, the challenge showed why the arbitration provision itself was unenforceable, *apart from* a challenge to the entire contract. *Parm*, 835 F.3d at 1334–35; *see also Attix*, 35 F.4th at 1306.[9]

---

[9] Petitioners' other authority is either in furtherance of their straw man argument or otherwise inapplicable. *Tuckman v. JPMorgan Chase Bank, N.A.*, No. 20-11242, 2021 WL 3357953, at *2, n.5 (11th Cir. Aug. 3, 2021) (Petition 17) concerned a party opposing arbitration who *was not a*

## C.    Resolution Would Not Materially Advance or Terminate the Litigation.

The final requirement under Section 1292(b) requires an examination of whether the "resolution of [the] controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin*, 381 F.3d at 1259.

Resolving the question of who decides fraud and duress does not "terminate the action" or even resolve whether Petitioners' claims proceed in arbitration. The arbitrators could hear Petitioners' evidence, determine that none of the Agreements are enforceable, and return the case to the District Court. Conversely, the District Court could hear the evidence of duress – such as that Petitioners left and returned to the *Freewinds* over 3,000 times before leaving the Sea Org – and reject the defenses and enforce the arbitration provisions. Either way, resolution of the question neither terminates the litigation nor *even resolves whether*

--------

*party to the agreement*. Other out-of-Circuit authority cited stands for the unremarkable proposition that challenges to the arbitration provision and the entire contract can be the same, but the arbitration challenge must still stand independently of the challenge to the entire contract. *See*, *e.g.*, *Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*, 22 Cal.App.5th 1096, 1108 (2018) (Petition 18) ("[A]llegations that the main contract is unlawful or unconscionable does not affect the enforceability of the arbitration clause.").

*an arbitration occurs.* Certification is not appropriate. *Ryan, Beck & Co., LLC v. Fakih*, 275 F.Supp.2d 393, 396 (E.D.N.Y. 2003); *McFarlin*, 381 F.3d at 1259.

## II.  The First Amendment Question Should Not Be Certified.

### A.    This Is Not a "Controlling Question of Law."

Petitioners' authority for their First Amendment argument[10] is *Bixler,* an unpublished and uncitable opinion from the California Court of Appeal. (Petition 19; Arbitration Order 12-13.) The District Court held, "*Bixler* is distinguishable" *based on the facts of this case.* (Arbitration Order 13.) The application of law to the facts of the case is not a pure question of law. *McFarlin*, 381 F.3d at 1259. Furthermore, analysis of any purported constitutional violation is fact-based, premature, and speculative. Petitioners do not explain how the First Amendment would be violated, and no violation is apparent. One need not be a practicing Scientologist to participate in Scientology arbitration, which requires no profession of faith or any religious ceremony. (S.A.179, ¶14.)

---

[10] Petitioners phrase the First Amendment question as whether they can be "forced" to participate in Scientology arbitration. (Petition 1-2.) The claim of "force" is fiction. Respondents seek to enforce a forum-selection provision. Petitioners can *choose* to bring their claims in that forum. But they cannot proceed in a forum – civil court – that the parties foreswore.

### B.    There Is No Substantial Ground for Difference of Opinion.

#### 1.    *Bixler* Does Not Create a "Split" of Authority.

*Bixler* does not create a "split" among the courts of this Circuit or the Circuit Courts requiring review. *D.A.M.,* 2018 WL 11372107, at *4. Although the Petition claims that *Bixler* applies because "California law governs litigation over the arbitration issue," (Petition 19), federal law – not California law – governs Petitioners' claim that their federal constitutional rights have been violated. *See Danforth v. Minnesota*, 552 U.S. 264, 290–91 (2008) (whether a constitutional violation has occurred is a question of federal law). *Bixler* is not even law in California, where unpublished opinions are not precedent and cannot be cited. Cal. R. Ct. 8.1115; (Arbitration Order 13).

Furthermore, the District Court held *Bixler* inapplicable to Petitioners' claims because "[t]he conduct alleged here occurred while Plaintiffs were members of the Church – their claims do not implicate conduct after separation." (Arbitration Order 13.) The Petition seeks to avoid this by falsely claiming *Bixler* "did not limit its holding to conduct that occurred after plaintiff had already left Scientology." (Petition 19.) Yet *Bixler* did exactly that, noting plaintiffs were not bound by the

arbitration provisions because their claims "alleged tortious conduct occurring after their separation from the Church and do not implicate resolution of ecclesiastical issues." 2022 WL 167792, at *1. *Bixler* does not extend to Petitioners' claims: "We do not express an opinion on . . . whether arbitration could properly be compelled if petitioners were to bring claims for acts occurring while they were church members." *Id.*, *15, n.22. *Bixler* used this limitation to distinguish this Court's *Garcia* decision. *Id.*, *9, n.19.[11]

### 2.    The First Amendment Question Raises No Important or Difficult Issues.

The Petition incorrectly argues enforcing private arbitration agreements raises a "weighty constitutional question" and "an issue of first impression." (Petition 11-12, 19.) This argument contradicts well-settled law that Constitutional due process protections "do not extend to 'private conduct abridging individual rights.'" *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988). "It is well established that judicially enforcing arbitration agreements does not

---

[11] *Bixler* also does not apply because Petitioners' claims arising from their Sea Org service implicate ecclesiastical issues. *See Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171, 194–95 (2012).

constitute state action." *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 838 n.1 (9th Cir. 2017); *Davis v. Prudential Secs., Inc.*, 59 F.3d 1186, 1191 (11th Cir. 1995) ("we agree with the numerous courts that have held that the state action element of a due process claim is absent in private arbitration cases."). Court enforcement of Petitioners' arbitration agreements cannot violate Petitioners' constitutional rights for the simple reason that state action is absent.[12]

## C.    Deciding the Question Will Not Materially Advance or Terminate the Litigation.

Interlocutory review of an order compelling arbitration risks prolonging the litigation "needlessly." *D.A.M.*, 2018 WL 11372107, at *4. Petitioners' claims will be resolved faster in a streamlined arbitration than in interlocutory appeal and any subsequent proceeding. *See Adler v. Dell, Inc.*, No. 08-13170, 2009 WL 646885, at *1 (E.D. Mich. Mar. 10, 2009) (denying 1292(b) certification of arbitration order); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1276 (11th Cir. 2000)

---

[12]    Conversely, "refusal to enforce the parties' arbitration agreement" *because* they are religious would create "an unjust bias against religion." *Encore Prods., Inc. v. Promise Keepers*, 53 F.Supp.2d 1101, 1113 (D. Colo. 1999).

("[I]nterlocutory appeals are inherently 'disruptive, time-consuming, and expensive.'").

Petitioners' argument would apply to *every* order compelling arbitration. This cannot meet the "high threshold" for interlocutory review. *See, e.g.*, *Matthews v. Woodmen of World Life Ins. Soc.*, No. 208-132, 2009 WL 10702559, at *2 (S.D. Ga. Feb. 13, 2009) ("Plaintiffs have failed to show that an immediate appeal of the Court's order compelling arbitration would 'advance the termination of the litigation.'"); *Houston v. NPC Int'l, Inc.*, No. 13-01160, 2014 WL 12535302, at *3 (W.D. Mo. May 23, 2014) ("If possibility of error is all that is required to satisfy the third prong of § 1292(b), this prong would be satisfied whenever a court orders anything, making the prong a nullity.").

## CONCLUSION

The Petition should be denied.


Respectfully submitted,


*/s/ Gustavo J. Membiela*

26

Gustavo J. Membiela
Winston & Strawn LLP
200 South Biscayne Blvd.,
Suite 2400
Miami, FL 33131
(305) 910-0717
gmembiela@winston.com

*Counsel for Defendant-Respondent Church of Scientology International*

Christopher G. Oprison
DLA Piper, LLP
200 South Biscayne Blvd., Suite 2500
Miami, FL 33131
(305) 423-8500
Chris.oprison@dlapiper.com

*Counsel for Defendant-Respondent Religious Technology Center*

Charles M. Harris
Brigid A. Merenda
Trenam Law
200 Central Avenue, Suite 1600
St. Petersburg, FL 33701
(727) 896-7171
charris@trenam.com
bamerenda@trenam.com

*Counsel for Defendant-Respondent Flag Service Organization*

David B. Weinstein
Brian C. Porter
Greenberg Traurig, P.A.
101 E. Kennedy Blvd., Suite 1900
Tampa, FL 33602
(813) 318-5700
weinsteind@gtlaw.com
brian.porter@gtlaw.com

Brigid Cech Samole
Greenberg Traurig, P.A.
333 SE 2nd Avenue, Suite 4400
Miami, FL 33131
(305) 579-0500
Brigid.cechsamole@gtlaw.com

*Counsel for Defendant-Respondent Flag Ship Service Organization*

27

Robert V. Potter, Jr.
Johnson Pope Bokor Ruppel &
Burns
311 Park Place Blvd., #300
Clearwater, FL 33759
(727) 461-1818
BobP@jpfirm.com

*Counsel for Defendant-Respondent
IAS Administrations*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) and the word limit of Fed. R. App. P. (5)(c)(1) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 5091 words.

This document complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface, 14-point Century Schoolbook, using Microsoft Office Word 365.

June 30, 2023                    */s/ Gustavo J. Membiela*
                                 Gustavo J. Membiela

                                 *Counsel for Defendant-Respondent*
                                 *Church of Scientology International*

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2023, I caused true and correct copies of this brief to be electronically filed with the Clerk of Court via the Court's CM/ECF system, which will automatically send a notice of electronic filing to all registered participants.


June 30, 2023                    */s/ Gustavo J. Membiela*
                                 Gustavo J. Membiela

                                 *Counsel for Defendant-Respondent*
                                 *Church of Scientology International*